MATTER OF EDWARDS

In DEPORTATION Proceedings

A-11707325

*Decided by Board November 12, 1963, and March 9, 1964*

Respondent, admitted to the United States for permanent residence in 1916, convicted in 1939 and again in 1961 of a crime involving moral turpitude, who last entered the United States in 1962 upon his erroneous claim of United States citizenship following a brief absence of a few hours to Canada to attend a funeral, is eligible for the exercise of the discretionary authority contained in section 212(c), Immigration and Nationality Act, since it is not necessary that respondent's return to the United States have been an "entry" under *Rosenberg* v. *Fleuti*, 374 U.S. 449, for the purposes of a grant of relief under section 212(c), which section makes no reference to "entry" but states "returning to a lawful unrelinquished domicile".

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of two crimes involving moral turpitude after entry not arising out of a single scheme of criminal misconduct, to wit: (1) Breaking and entering a building in the nighttime with intent to commit larceny therein; (2) larceny by conversion [8 U.S.C. 1251(a)(4)].

BEFORE THE BOARD
(November 12, 1963)

Respondent is male, married and 54 years old. He was admitted to the United States for permanent residence on July 4, 1916, at the age of 7 years, accompanied by his mother, father, one brother (Antonios), and one sister (Besine). Respondent was last admitted on June 12, 1962, from Canada on a claim of United States citizenship following a visit of a few hours to attend a funeral. The special inquiry officer found that the record establishes that respondent was born in Canada, that he is an alien, and that he is deportable on the charge stated above, conviction of two crimes involving moral turpitude after entry, not arising out of a single scheme of criminal misconduct.

There was an issue regarding respondent's claim of United States citizenship, which was resolved against him by the special inquiry

officer. Four exhibits relating to respondent's place of birth are in the record. Exhibit 7 is his birth registration, naming the parents, and the fact that they were married in Lebanon. It omits the place of the child's birth but the special inquiry officer believed that the registration would not have been made where it was if the child had been born outside the country. Other answers given on the registration form seem to assume birth in the home, and the mother, "Lizzie Edwards", gave and certified the information. Exhibit 8 is a photostatic copy of the naturalization application of respondent's mother, listing the names and places of birth of each of her children, including respondent. The mother is the best witness to the place of the child's birth, and she states that he was born in Canada on October 27, 1908. His baptismal certificate from St. Philips Church, Petrolia, Ontario, omits to state the place of his birth but shows his baptism on December 30, 1908, at Petrolia, Ontario. Exhibit 10 is the record of lawful admission Form I-404A of respondent, showing his entry at Detroit, Michigan, on July 4, 1916, with his parents and a brother and sister, Antonios and Besine. This record states that respondent's place of birth was Petrolia, Ontario, Canada. It shows further that one sister, Monzar (Monze), was already in Detroit. There is no record of the entrance or place of residence at that time of James. Two other children were born to respondent's parents in Detroit at later dates. The Board finds on the basis of these exhibits and the entire record that respondent was born in Canada at Petrolia, Ontario, on October 27, 1908.

Respondent was convicted on a plea of guilty in 1939 of breaking and entering in the nighttime with intent to commit larceny. He was placed on probation for 4 years and ordered to make restitution of $225. The record discloses that on November 24, 1943, respondent had paid only $66 of the restitution and that he was before the court on a violation of probation warrant. His probation officer stated that the complainant would accept $50 in full payment of the remaining restitution owed. Exhibit 12 shows that on April 15, 1942, respondent was discharged to join the Army.

Respondent was arrested for larceny by conversion and obtaining money under false pretenses. He was convicted on the larceny charge on October 5, 1961, and placed on probation for 3 years, charged $75 costs and ordered to make $450 restitution. Respondent was engaged in operating a business of selling freezers and a food plan. He testified that he had a number of salesmen in his employ, and that his difficulties came about because many of the purchasers abandoned their payments. Respondent's reserves with the bank were not sufficient to cover the losses.

The special inquiry officer granted respondent adjustment of status under section 249 of the Immigration and Nationality Act, ordering that a record of lawful admission for permanent residence be made as of July 4, 1916, and that these proceedings be terminated. In connection with this adjustment of status it was necessary to grant respondent a waiver of excludability under section 212(g) of the Immigration and Nationality Act because of respondent's inadmissibility for conviction of the 2 crimes set forth above. The Immigration and Naturalization Service appeals from this order, contending that section 249 is not approropriate under these circumstances, and that the waiver under section 212(g) should not be granted respondent, because it should be unconditional, not subject to conditions and revocations attached thereto by the special inquiry officer. The Service contends further that respondent has not established the good moral character required of an applicant for adjustment under section 249, and that his deportation would not result in extreme hardship to his United States citizen spouse. The order of the special inquiry officer of March 20, 1963, will be withdrawn, but these proceedings will be terminated under section 212(c) [1] of the Immigration and Nationality Act.

In granting respondent's application for registry under section 249 of the Immigration and Nationality Act, although there is a record of his lawful admission for permanent residence, the special inquiry officer followed *Matter of R—*, 8 I. & N. Dec. 598 (Ass't. Comm., March 9, 1960), wherein the Assistant Commissioner held that a prior record of lawful admission for permanent residence does not preclude adjustment of status under section 249, where the alien's immigration status later became unlawful as the result of illegal entry. The special inquiry officer quoted the Assistant Commissioner's statement that "a subsequent illegal entry vitiates the prior record of lawful admission, and if the alien is otherwise eligible, he may be granted the benefits of section 249". We have held to the contrary in several decisions since *Matter of R—*. In *Matter of M—P—*, 9 I. & N. Dec. 747 (BIA, June 21, 1962), we held that an alien whose original entry was for "lawful permanent residence" has not "changed his status" under section 101

---

[1] Section 212(c), Immigration and Nationality Act provides: Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraph (1) through (25) and paragraphs (30) and (31) of subsection (a). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b).

(a)(20) of the Immigration and Nationality Act [2] by having become excludable or deportable. We found that the record of his admission for lawful permanent residence is available within the meaning of section 249, that any other interpretation "would render ineffective any waivers of inadmissibility now provided by the immigration laws."

In *Matter of Preciado-Castillo*, Int. Dec. No. 1230 (BIA, July 6, 1962), we found that registry under section 249 is not available for an alien who was admitted for permanent residence and who subsequently became deportable for causes arising after entry. We stated that section 249 was not available to Preciado, for the reasons that there existed "a record of lawful entry which has not been vitiated by the respondent's subsequent deportability on criminal grounds".

In *Matter of Da Silva*, Int. Dec. No. 1268 (BIA, February 21, 1963), the Board held that an alien lawfully admitted to the United States for permanent residence, who subsequently became deportable because of convictions of crimes involving moral turpitude, is statutorily ineligible for adjustment of status under section 245 of the Immigration and Nationality Act, as amended. In that decision we drew an analogy between adjustment under section 249 and under section 245. We pointed out that if the interpretation of the special inquiry officer were permitted (granting adjustment under section 245 in these circumstances), section 244(a)(5) suspension of deportation would be abandoned. We concluded that Congress did not eliminate section 244(a)(5), with its more rigorous requirements, and did not, therefore, intend section 245 to have as broad an application as the special inquiry officer's interpretation. We said "it seems clear than section 245 was intended to perform no other function than to permit nonimmigrants to obtain permanent residence status without leaving the United States." The Board concludes in the instant case that Edwards' 1960 entry cannot be used as the basis for a grant of section 249 relief from deportation.

The Board will exercise the discretion contained in section 212(c) of the Immigration and Nationality Act in the alien's behalf. The authority of the Board to grant this form of relief from deportation under the present circumstances was considered in *Matter of S—*, 6 I. & N. Dec. 392 (BIA, November 24, 1954; Atty. Gen., March 15, 1955), which is similar to the instant case. The reasoning of that decision disposes of most of the issues here. S— had the advantage that he

---

[2] Section 101(a)(20) of the Immigration and Nationality Act provides: The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

had no arrests or convictions for crime of any kind in the United States in the ten-year period preceding the decision.

Section 212(c) of the Immigration and Nationality Act requires that the alien must have been "lawfully admitted for permanent residence." Respondent was admitted to the United States for permanent residence on July 4, 1916, although he states that he lived here with his father for several years before that time. He proceeded to Canada voluntarily and was returning on June 12, 1962, to an unrelinquished domicile of 7 consecutive years. His last crime was committed October 5, 1961, so that he was inadmissible at the time of his last entry. He claimed to be a citizen, and there is some basis in the record for believing that respondent thought he was a United States citizen. We have held that when an alien claims citizenship in good faith he has not made an entry without inspection. The Service representative felt that the fact that respondent had seen his baptismal certificate at the time of his marriage should have corrected his belief that he was born in the United States. However, the baptismal certificate, while it comes from Petrolia, Ontario, omits to state the place of respondent's birth, although it shows the place of his baptism. The fact of respondent's birth in Canada is established by several declarations of the mother in the possession of the Immigration and Naturalization Service. However, these documents (Exhs. 8 and 10) probably were not available to respondent until this proceeding was commenced.

Respondent stated that his parents and other persons from Lebanon came to Detroit where an uncle owned a large tenement house and a door-to-door selling operation. These people were provided merchandise by the uncle, which they sold in Canada and elsewhere by house-to-house canvassing. Respondent testified that he believed that he was born in Detroit at a time when his mother was there to obtain merchandise, and that he was later taken to Petrolia for baptism. He pointed to the fact that nearly 2 months elapsed after his birth before he was baptized, that usually persons of the Roman Catholic faith do not permit so long a period to elapse between an infant's birth and the time of his baptism.

Respondent served 3 years in the United States Army, including 28 to 30 months in the Aleutian Islands, and was discharged in December 1945. He testified to 3 separate occasions while he was in the Armed Forces when a commanding officer requested that any one who was not naturalized make arrangements for naturalization. He testified that he considered himself a citizen by birth and for that reason did not take advantage of the opportunity when it was offered. Respondent also stated that he has voted in the United States since 1932 when he was 23 years old, a period of over 30 years. These facts

510

do not establish that respondent is a United States citizen, but we believe that he probably made the claim in good faith.

The Service representative stated that the respondent has a "long police record". Since 1942 when respondent was discharged from probation in order to enter the army, he has been arrested 3 times (according to Exh. 12) for violation of the state gambling laws. In 1947 the charge was dismissed. In 1952 he was sentenced to 1 year, placed on probation and charged $50 costs. In 1955 he was given a sentence of 2 years on probation. Respondent served no time in jail except while awaiting trial. His only sentences have been to probation, costs and restitution.

In granting respondent the waiver of inadmissibility provided in section 212(g), the special inquiry officer found that respondent's deportation would result in extreme hardship to his United States citizen wife. They have been married since 1946, and respondent's wife is self-supporting. They have no children. Respondent is now working for his wife's brother for a small salary. However, respondent has lived practically his entire life in the United States, and on the basis of the entire record deportation would be a harsh punishment. We will order that the proceedings be terminated.

**ORDER:** It is ordered that the order of the special inquiry officer of March 20, 1963, be and is hereby withdrawn.

*It is further ordered* that the proceedings be terminated pursuant to the discretion contained in section 212(c) of the Immigration and Nationality Act, and that the alien be considered as having been lawfully admitted to the United States for permanent residence at Detroit, Michigan, on June 12, 1962, notwithstanding his inadmissibility at that time as one who was convicted of 2 crimes involving moral turpitude, to wit: breaking and entering in the nighttime with intent to commit larceny therein, and larceny by conversion (1939 and 1961), subject to revocation in the discretion of the Attorney General after hearing if the alien subsequently commits any offense.

**BEFORE THE BOARD**

(March 9, 1964)

On November 12, 1963, this Board terminated proceedings in this matter, pursuant to the discretion contained in section 212(c) of the Immigration and Nationality Act, and ordered that the alien be considered as having been lawfully admitted to the United States for permanent residence on June 12, 1962, notwithstanding his inadmissibility for conviction of the crimes set forth above. We found the respondent ineligible for the grant of adjustment under section 249

511

and the waiver of excludability under section 212(g) of the Immigration and Nationality Act granted by the special inquiry officer.

It is the position of the Immigration Service in this motion that respondent did not make an "entry" into the United States on his return from Canada on June 12, 1962, as the term "entry" is interpreted in *Rosenberg* v. *Fleuti*, 374 U.S. 449, 10 L. ed. 2d 1000. If the respondent made no entry (under the rule of *Fleuti*), declares the motion, section 212(c) cannot be invoked in respondent's behalf, because section 212(c) applies only to grounds of exclusion. If there was no "entry" there can be no ground of inadmissibility under section 212(a), and section 212(c) cannot be invoked to waive a nonexistent ground of inadmissibility. The Service motion will be denied.

It is the opinion of the Board that for the purposes of a grant under section 212(c) it is not necessary that the respondent's return to the United States have been an "entry" under the rule of *Fleuti*. Section 212(c) makes no reference to an "entry", but states, "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, *and who are returning to a lawful unrelinquished domicile of 7 consecutive years*, may be admitted in the discretion of the Attorney General . . .". (Emphasis supplied.) It cannot be denied that Edwards was returning to a lawful unrelinquished domicile of more than 7 consecutive years.

Section 241 describing the "General Classes of Deportable Aliens" refers in subsections (1), (2), (3), (4), (6), (7), (8), (10), (11), (12), (13), (14), (15), and (16) to various activities following "entry" which render an alien deportable. Entry is defined in section 101(a)(13). However, section 212(c) makes no reference to "entry" or requirement that respondent have made an "entry". In the absence of *Rosenberg* v. *Fleuti*, *supra*, there would be no question but that this respondent would be eligible for a grant of section 212(c). The contention of the Service would extend the *Fleuti* doctrine to a situation which certainly was not contemplated by the Court in issuing this decision. We fail to see that extending this doctrine to a grant under section 212(c) is necessary, desirable, or justifiable.

The issues raised under point 2(b) of the Service motion, "Waiver under Section 212(c)—Discretion", have been considered in our prior decision, and there is no need to review these matters here. The motion will be denied.

**ORDER:** The motion for reconsideration is denied.