Ernest FRANCIS, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 610, Docket 74–2245.

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1976.
Decided March 9, 1976.

Janet M. Calvo, The Legal Aid Society, New York City (Kalman Finkel, Morton B. Dicker, Julius C. Biervliet, Civ. Div., The Legal Aid Society, New York City, and John E. Kirklin, Civil Appeals Bureau, The Legal Aid Society, New York City, on the brief), for petitioner.

Thomas H. Belote, Special Asst. U. S. Atty., New York City (Thomas J. Cahill, U. S. Atty., S. D. N. Y. and Mary P. Maguire, Special Asst. U. S. Atty., New York City, on the brief), for respondent.

Before LUMBARD, SMITH and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

The Board of Immigration Appeals entered a final order of deportation against Ernest Francis, petitioner, on August 14, 1974. The basis for the order is petitioner's conviction of a marijuana offense. Ernest Francis seeks review of that order pursuant to Section 106 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105a, claiming that he is entitled to apply for the discretion of the Attorney General to permit him to remain in this country.

Under present Board interpretations, a lawfully admitted alien, convicted of a narcotics offense, who departs from and returns to the United States to an unrelinquished domicile of seven years may be permitted to remain in this country in the Attorney General's discretion. On the other hand, the Attorney General is without discretion to allow petitioner, a lawfully admitted alien convicted of a narcotics offense, to remain in the United States despite an unrelinquished domicile of more than seven years solely because he has never made a temporary departure from this country since the time of his conviction. Petitioner contends that the distinction between these two classes of aliens lacks any basis rationally related to a legitimate governmental interest, and therefore, deprives him of the equal protection of the law. We agree, and, accordingly grant the petition and remand so that the Attorney General may exercise his discretion in this proceeding.

Ernest Francis was admitted to this country as a permanent resident on September 8, 1961. Mr. Francis, a citizen and native of Jamaica, West Indies, is 55 years old, married and the father of a nine year old daughter. He is presently employed as a handyman and resides with his family in the Bronx. Petitioner's wife and daughter are citizens of the United States. His three brothers and one sister are also citizens. Petitioner's father, Joseph Francis, was, at the time of his death, a citizen of this country.

On October 20, 1971, following a plea of guilty, petitioner was convicted of criminal possession of dangerous drugs (marijuana), N.Y. Penal Law § 220.05 (McKinney's 1967).[1] He was sentenced to a term of probation by the Supreme Court, Bronx County on December 14, 1971. Apart from this conviction and a twenty-five dollar fine for gambling in September, 1973, petitioner has no criminal record.

The Immigration and Naturalization Service ("INS") instituted a deportation proceeding against petitioner on December 6, 1972 by issuing an order to show cause and notice of hearing. The INS charged him with being deportable under Section 241(a)(11) of the INA, 8 U.S.C. § 1251(a)(11) by reason of the marijuana conviction. In pertinent part, the section provides that

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General be deported who—

\* \* \* \* \* \*

(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana . . . .

---

1. Section 220.05 has been replaced by Section 220.03 (McKinney's Supp.1975–76). The crime remains a misdemeanor.

Francis did not, and does not now, dispute his deportability under Section 241(a)(11). Rather, he argues that he was eligible for discretionary relief under Section 212(c) of the INA, 8 U.S.C. § 1182(c), a provision which is primarily applicable to exclusion proceedings. The section provides that

(c) Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) through (25) and paragraph (30) of subsection (a). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under Section 211(b).[2]

On February 20, 1974, in an oral decision, the Immigration judge held that Section 212(c) consideration was not available and ordered petitioner deported. Petitioner appealed that decision to the Board on February 28, 1974. On August 15, 1974, the Board dismissed the appeal holding that petitioner was ineligible "for any form of discretionary relief from deportation."

Petitioner seeks a declaration from this court that he is eligible to apply to the Attorney General for discretionary relief under Section 212(c).

A brief review of the background of Section 212(c), as it is presently interpreted, is essential to an understanding of petitioner's claims. The section has its origins in the Seventh Proviso to Section 3 of the Immigration Act of 1917, 39 Stat. 874, which reads in part:

That aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General, and upon such conditions as he may prescribe.

The Proviso was originally intended to apply to exclusion proceedings which are conducted at the time of border entry into the United States.

The first significant expansion of the Seventh Proviso occurred in *Matter of L,* 1 I. & N. Dec. 1 (1940). There the Board held that the Proviso was not limited to exclusion proceedings but was exercisable in a deportation proceeding where the alien had departed and returned to this country subsequent to the time the ground for deportation arose. The exercise of discretion in the deportation proceedings was deemed a *nunc pro tunc* correction of the record of reentry. In approving this construction, the Attorney General concluded that strictly limiting the Seventh Proviso to exclusion proceedings would be "capricious and whimsical." *Id.* at 5.

This interpretation was further expanded in *Matter of A,* 2 I. & N. Dec. 459 (1946), approved by Atty. Gen. (1947). There the Board held that the mere fact that the alien had not reentered the country following his conviction was not a bar to the exercise of discretionary relief in a deportation proceeding. Under this interpretation, the petitioner in this action would have been eligible for discretionary review.

With the passage of the Immigration and Naturalization Act of 1952, the Seventh

---

**2.** Section 212(a)(23), 8 U.S.C. § 1182(a)(23) provides for the exclusion of:

Any alien who has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, produc-

tion, compounding, transportation, or exportation of opium, coca leaves, heroin, marihuana, or any salt derivative or preparation of opium or coca leaves, or isonipecaine or any addiction-forming or addiction-sustaining opiate; or any alien who the consular officer or immigration officers know or have reason to believe is or has been an illicit trafficker in any of the aforementioned drugs;

The Section parallels Section 241(a)(11), 8 U.S.C. § 1251(a)(11) which applies to deportation proceedings.

Proviso was replaced by Section 212(c). The 1952 provision requires the alien to have been admitted for permanent residence and the temporary departure to be "voluntary and not under an order of deportation . . . ." Like the Seventh Proviso, Section 212(c) is facially limited to exclusion proceedings.

In 1956, the Board was required to decide whether the new provision could be applied in certain deportation proceedings. In *Matter of G. A.*, 7 I. & N. 274 Dec. (1956), the respondent, a citizen of Mexico, had entered the country as a permanent resident alien in 1913. In 1947 he was convicted of a marijuana offense. Deportation proceedings were not brought against him until 1956. Relying on its pre-amendment decision in *Matter of L,* 1 I. & N. Dec. 1 (1940), supra, the Board concluded that respondent was eligible for Section 212(c) consideration by reason of a temporary absence from the United States in 1952. The Board reasoned that since respondent would have been eligible for Section 212(c), relief at the time he reentered the country, it could be granted at this later juncture. The exercise of Section 212(c) discretion would, if the ruling were favorable to the alien, preclude deportation.

Section 212(c) has also been extended to deportation proceedings where an alien has requested an adjustment of status under Section 245, 8 U.S.C. § 1255, *Matter of Smith*, 11 I. & N. Dec. 325 (1965). The Board reasoned that since the Section 245 application subjected the alien to all bases for exclusion, 8 U.S.C. § 1255, there is "no

valid reason for denying him the benefits of Section 212(c) on the technical ground that he is not returning to the United States after a voluntary departure." *Id.* at 327.[3]

The statutory interpretation which this petitioner complains of derives from the decision in *Matter of Arias-Uribe*, 13 I. & N. Dec. 696 (1971). There the Board declined to extend Section 212(c) to an otherwise eligible alien who had not departed the country since his narcotics conviction. Since the alien, like this petitioner was a native of the Western Hemisphere, he was ineligible for an adjustment of status under Section 245 and, therefore, the *Smith* case was not applicable. In denying Section 212(c) treatment to the alien, the Board seized upon the change in language between the Seventh Proviso, which required that the alien be "returning [to the United States] after a temporary absence", and Section 212(c), which requires that the alien have "temporarily proceeded abroad voluntarily and not under an order of deportation." The Board viewed this as meaning that Congress intended by this clause to require an actual departure and return to this country.[4] 13 I. & N. Dec. at 700. In a brief per curiam opinion, the Ninth Circuit affirmed this construction of the statute. *Arias-Uribe v. INS*, 466 F.2d 1198 (1972). See also *Dunn v. INS*, 499 F.2d 856, 858 (9th Cir. 1974), *cert. denied*, 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 801 (1975). Although there is nothing in the legislative history of the 1952 Act which indicates that Congress intended to change prior case law in this respect, we agree with the Ninth Circuit that the Board's interpretation is consistent

---

**3.** Section 245, 8 U.S.C. § 1255 provides in part:

    (a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved.

    (c) The provisions of this section shall not be applicable to any alien who is a native of any country of the Western Hemisphere or of any adjacent island named in section 1101(b)(5) of this title.

    Under paragraph (c) petitioner Francis is ineligible by reason of his Jamaican citizenship.

**4.** The Board felt its position did not conflict with its interpretation in *Matter of Smith*, 11 I. & N. Dec. 325 (1965) which allowed Section 212(c) discretion to be applied in conjunction with a Section 245 adjustment of status without a physical departure. 13 I. & N. Dec. at 698–99.

with the language of Section 212(c). See S.Rep.No. 1137, 82nd Cong., 2d Sess. (1952); H.R.No.1365, 82nd Cong., 2d Sess. (1952); U.S.Code Cong. & Admin.News 1952, p. 1653.

■ It is the petitioner's contention that if this statutory construction is applied to his case, then he is deprived of the equal protection of the laws as guaranteed by the fifth amendment.[5] He argues that the statute as so applied creates two classes of aliens identical in every respect except for the fact that members of one class have departed and returned to this country at some point after they became deportable. Thus the distinction is not rationally related to any legitimate purpose of the statute.

■ The authority of Congress and the executive branch to regulate the admission and retention of aliens is virtually unrestricted. *Lem Moon v. United States*, 158 U.S. 538, 15 S.Ct. 967, 39 L.Ed. 1082 (1895); *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). Enforcement of the immigration laws is often related to considerations both of foreign policy and the domestic economy. Nevertheless "[i]n the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process. . . . " *Galvan v. Press*, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954).

■ It has long been held that the constitutional promise of equal protection of the laws applies to aliens as well as citizens, *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Recently, this court reaffirmed the applicability of the equal protection guarantee to deportation proceedings. *Noel v. Chapman*, 508 F.2d 1023 (2d Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40, 44 U.S.L.W. 3200 (1975). Although the right of a permanent resident alien to remain in this country has never been held to be the type of "fundamental right" which would subject classifications touching on it to strict judicial scrutiny, the Supreme Court has observed that "deportation can be the equivalent of banishment or exile. . . . " *Delgadillo v. Carmichael*, 332 U.S. 388, 391, 68 S.Ct. 10, 12, 92 L.Ed. 17, 19 (1947).

■ Under the minimal scrutiny test, which we consider applicable in this case, distinctions between different classes of persons

> must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

*Stanton v. Stanton*, 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688, 694 (1975); *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990 (1920).[6]

In determining whether the Board's policy survives minimal scrutiny, the purpose of Section 212(c) must be examined. As the government notes in its brief, Congress was concerned that there be some degree of flexibility to permit worthy returning aliens to continue their relationships with family members in the United States despite a ground for exclusion. Brief for government at 12. Realizing that these considerations apply with equal force to an alien who has already reentered, perhaps illegally, the Board chose to expand eligibility to that group. *Matter of G. A.*, 7 I. & N. Dec. 274 (1956). Thus an alien who had been convicted of two crimes involving moral turpitude and, therefore, was deportable under Section 241(a)(4), 8 U.S.C. 1251(a)(4) was eligible for Section 212(c) discretion

---

5. "[I]f a classification would be invalid under the Equal Protection·Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment." *Johnson v. Robison*, 415 U.S. 361, 364 n.4, 94 S.Ct. 1160, 1164, 39 L.Ed.2d 389, 396 (1974); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

6. Equal protection considerations somewhat similar to those present in this case have recently prompted courts in this circuit to strike down classification for lack of a rational basis. *See Crawford v. Cushman*, 531 F.2d 1114 (2d Cir. 1976); *Fioto v. United States Department of Army*, 409 F.Supp. 831 (E.D.N.Y.1976) (three judge court).

because he was able to demonstrate that several months after his last conviction he left the country for a few hours to attend a funeral in Canada. *Matter of Edwards*, 10 I. & N. Dec. 506 (1963). The government has failed to suggest any reason why this petitioner's failure to travel abroad following his conviction should be a crucial factor in determining whether he may be permitted to remain in this country. Reason and fairness would suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time.

It is the government's position that Congress has chosen to treat these two classes of aliens somewhat differently by providing a separate but analogous scheme of discretionary relief to the non-departing alien. Section 244(a)(2), 8 U.S.C. § 1254(a)(2), allows the Attorney General to exercise discretion regarding certain deportable aliens who have been in the country for ten years following the act which was the ground for deportation.[7] This argument overlooks the fact that a deportable resident alien who briefly sojourns in Bermuda and then returns is eligible for discretionary consideration under Section 244(a)(2) as a non-departing alien. In addition, if otherwise qualified, he is eligible for Section 212(c) relief. See *Matter of G. A., supra.*

■ Fundamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner. We do not dispute the power of the Congress to create different standards of admission and deportation for different groups of aliens.[8] However, once those choices are made, individuals within a particular group may not be subjected to disparate treatment on criteria wholly unrelated to any legitimate governmental interest. We find that the Board's interpretation of Section 212(c) is unconstitutional as applied to this petitioner.

■ Accordingly, the petition is granted. The case is remanded to the Board so that the Attorney General's discretion under Section 212(c) may be exercised.[9]

---

**7.** Less than five years have elapsed since petitioner's conviction. Thus he is ineligible for this discretionary provision.

**8.** To that extent we agree with our brethren that "the validity of distinctions drawn by Congress with respect to deportability is not a proper subject for judicial concern." *Oliver v. INS*, 517 F.2d 426, 428 (2d Cir. 1975); *Bronsztejn v. INS*, 526 F.2d 1290, 1291 (2d Cir. 1975).

**9.** 8 C.F.R. § 212.3 outlines the procedure for applying for Section 212(c) discretion:

An application for the exercise of discretion under section 212(c) of the Act may be submitted by the applicant to a special inquiry officer in the course of proceedings before him under sections 235, 236, and 242 of the Act and this chapter, and shall be adjudicated by the special inquiry officer in such proceedings, regardless of whether the applicant has made such application previously to the district director.