**Vincent APPAH, A–23–428–379, Petitioner,**

**v.**

**Charles C. SAVA, as District Director of the Immigration & Naturalization Service for the New York district, Respondent.**

**86 Civ. 818–CSH.**

United States District Court, S.D. New York.

May 13, 1986.

Leo E. Ypsilanti, P.C., New York City, Belote & Futterman, Richfield, Conn. (Gunnar Sievert, Thomas H. Belote, of counsel), for petitioner.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondent; Noel A. Ferris, Sp. Asst. U.S. Atty., of counsel.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In his habeas corpus petition, Vincent Appah claims that his continued detention by the Immigration and Naturalization Service ("INS") is unlawful, and that he should be released on his own recognizance or on an appropriate bond. The INS resists the petition.

I.

The factual background appears from the decision rendered on December 30, 1985 by Immigration Judge Sydney B. Rosenberg in exclusionary proceedings involving Appah. I quote the opening paragraphs of Judge Rosenberg's opinion: [1]

> "The applicant [Appah] is a forty year old, married male alien, a native and citizen of Ghana, who is seeking admission to the United States as a returning resident.
>
> "The applicant was granted adjustment of status to that of a lawful permanent resident under Section 245 of the Immigration and Nationality Act on September 4, 1980, based on his marriage on April 25, 1980, to Monica Janeice Woodridge, a United States citizen by birth.
>
> "The applicant arrived at John F. Kennedy Airport, New York on June 9, 1985, seeking admission to the United States as a returning resident. He presented an alien registration card in the name of Vincent Appah. However, because he also had in his possession, three Ghanaian passports (two in the name of Vincent Appah and one in the name of Kwaku Abankwah Appah) and a U.S. passport in the name of Robert Woodbridge, and each one bearing the applicant's photograph, the immigrant inspector doubted that the applicant was the individual who was issued the alien registration card.

Appah was detained and placed in exclusion proceedings, charged with being excludable under section 212(a) of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1182(a) (the "Act"). That section of the Act lists 31 classes of "aliens" who "shall be excluded from admission into the United States." INS took the position that subsections (a)(19) and (a)(20) applied to Appah. They provide for exclusion of:

> "(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;
>
> "(20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title; ..."

Subsequent investigation satisfied the INS that the alien registration card in Appah's possession did, in fact, belong to him. Therefore, the INS dropped the (a)(20) charge. The fate of the (a)(19) charge is less clear from the record, although Judge Rosenberg never sustained that charge. Instead, the exclusion proceedings against Appah continued on different grounds. As Judge Rosenberg explains:

> "[T]he Service contends that the applicant, applied for and was issued a U.S. passport in 1982 under the name of Robert Woodridge, which he used to enter the United States on four prior occasions (Oct. 26, 1983, Jan. 21, 1984, April 28, 1984 and Sept. 4, 1984) as a United States citizen.
>
> "On each of the four occasions, because the applicant was admitted as a U.S.

1. The footnotes and references to exhibits are omitted.

citizen, he entered the U.S. without inspection. Since the applicant entered the United States on those occasions without inspection, the Service contends he is excludable because upon admission, he would immediately be deportable."

Entry without inspection does not implicate section 212(a) of the Act. It implicates section 241(a)(2), which triggers deportation, not exclusion. Notwithstanding that distinction, Judge Rosenberg agreed with the INS and held that Appah "is excludable from the United States because upon entry, he would be deportable having entered the United States on four different occasions without inspection." Administrative File ("AF") at 22. Appah has appealed Judge Rosenberg's decision to the Board of Immigration Appeals ("BIA"). He contends that Judge Rosenberg erred in making a deportability finding in an exclusion proceeding. That appeal is still pending before the BIA.

Appah has been under INS detention since June 9, 1985. On January 14, 1986, Appah's attorney wrote to the INS seeking release pending disposition of the appeal. He contended that Appah should be considered for release under the bail criteria applied to release during deportation proceedings rather than under the more stringent criteria for "parole" pending resolution of exclusion proceedings. He argued that the more lenient bail criteria applied because the immigration judge's finding of excludability had been solely based on Appah's immediate deportability.

By letter dated January 17, 1986, the INS denied Appah's bid for release. Appah's argument that the bail criteria used in deportation proceedings should apply was rejected. Instead, the INS applied the restrictive criteria for parole used in exclusion proceedings. Appah was found likely to abscond if paroled, and he was ordered detained pending disposition of his appeal. The instant petition challenges the decision denying bail.[2]

II.

At the heart of Appah's petition to this Court lies the accurate perception that parole conditions in exclusion proceedings are more stringent than bail provisions in deportation proceedings.

The regulations applicable to exclusion proceedings appear in 8 C.F.R. § 212.5. They provide that the district director should "consider" parole for certain classes of aliens inapplicable to Appah. § 212.5(a). The district director is given discretion to parole other aliens facing exclusion, § 212.5(b); but the INS, in its "Detention Policy Guidelines in Exclusion Cases" dated June 27, 1983, has stressed that "the legislative history of the parole provision shows a congressional intent that parole be used in a restrictive manner." Indeed, the pertinent provisions of the Act itself, section 212(d)(5)(A), limit the discretion of the Attorney General (delegated to district directors by the regulations) to grant parole "temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest..." *See Jean v. Nelson,* — U.S. —, 105 S.Ct. 2992, 2995, 86 L.Ed.2d 664 (1985); *Ledesma-Valdes v. Sava,* 604 F.Supp. 675, 680 (S.D.N.Y.1985).

In contrast, in deportation proceedings the Act, section 242(a), provides that in respect of an alien taken into custody pending a determination of deportability:

> "Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attor-

2. It is not entirely clear if Appah is petitioning this Court for release on his own recognizance or on bond. If that is his purpose, I would not usurp a function initially vested in the district director. But at the very least, Appah asks this Court to direct INS to free him from the restrictions of the parole regulations, and order the district director to entertain a bond application under the guidelines articulated in *Patel, supra.*

ney General may prescribe; or (3) be released on conditional parole."

No restrictions are imposed by the statute; and the BIA itself held in *Matter of Patel,* 15 I. & N. Dec. 666 (BIA 1976):

"An alien generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security, *Carlson v. Landon,* 342 U.S. 524 [72 S.Ct. 525, 96 L.Ed. 547] (1952), or that he is a poor bail risk, *Matter of Moise,* 12 I. & N. Dec. 102 (BIA 1967); *Matter of S— Y— L—,* 9 I. & N. Dec. 575 (BIA 1962)."

III.

The Act sets forth distinct grounds for exclusion and deportation. Although these grounds overlap, they are not coextensive; some specified for exclusion are not listed as grounds for deportation, and vice-versa. No specific language in the Act authorizes the INS to hold an alien excludable on a ground which triggers only deportation. Rather, the INS has interpreted the Act to permit a determination of deportability in exclusion proceedings. This interpretation, which has come to be known as the "futility doctrine," originated in the BIA's decision in *Matter of V—,* 1 I. & N.Dec. 293 (BIA 1942).[3] In that case, the BIA reasoned that "[i]t would be circuitous, futile, and unfair to hold an alien admissible and admit him and promptly undertake his deportation. It means little to the aliens [sic] whether the enforcement procedure is through [deportation] proceedings or an exclusion before a board of special inquiry." *Id.* at 295. The BIA found that such an interpretation "best observed" the "coherent framework of the immigration laws." *Id.*

Although Appah was originally charged with excludable offenses, the immigration judge's finding of excludability rested on the futility doctrine: he found Appah excludable because, and only because, he found that Appah would be immediately deportable if admitted. The merits of this decision are presently on administrative appeal before the BIA, and the parties agree that I should not reach it.

██ What is properly before me is the INS's decision not to evaluate Appah's application for release pending decision under the bail criteria applied in deportation proceedings. Even if the Act can properly be interpreted to mean that an alien's deportability can provide the basis for a finding of excludability in an exclusion proceeding, it does not follow *a priori* that disadvantages normally associated with exclusion proceedings apply when the basis for exclusion is a deportable, not an excludable offense.

The INS's decision to deny Appah bail and apply parole criteria is founded on this syllogism: (1) aliens subject to exclusion proceedings are not eligible for bail, but only for parole; (2) the INS found that Appah was excludable because if admitted he would be immediately deportable; (3) therefore, Appah is not eligible for bail.

This syllogism is flawed. The futility doctrine is an interpretation of the statute designed to achieve a coherent application of the immigration laws. The overly mechanical application of that doctrine by the INS here achieves precisely the opposite result. The doctrine was created to avoid the futile act of "admitting" a deportable alien, only immediately to rearrest and subject that alien to deportation proceedings. Its major premise is that "it means little to the aliens" whether the proceedings are labelled "deportation" or "exclusion."

That premise does not apply to questions of release pending final determination of status. Congress has chosen to afford those awaiting determinations of deportability in deportation proceedings the opportunity to apply for release on bail. Even if the Act can properly be interpreted to allow a determination of immediate deportability to give rise to exclusion and to allow that determination to be made in exclusion

3. *Matter of V—* was decided before the revision to the INA in 1952, but it is still cited in decisions applying the "futility doctrine." *See, e.g., Matter of R— G—,* 8 I. & N.Dec. 128, 129 (BIA 1958). Indeed, it was cited by Judge Rosenberg in his opinion in the case at bar, AF at 18.

proceedings—questions upon which I express no present view—there is no indication in the statute that Congress intended to set a stricter standard for release for those whose deportability is being determined in exclusion proceedings, solely because of the fortuitous circumstance that they were detained at the border. Absent such language, I decline to impute such a seemingly arbitrary intent to Congress.

I conclude that, on a proper construction of the Act, Appah's present entitlement to release must be measured by the terms and conditions of bail, and not by the parole conditions applicable in exclusion proceedings.[4] I am reinforced in this conclusion by my view that a contrary construction would raise serious constitutional questions. I follow the Supreme Court's lead in *Kwong Hai Chew v. Colding,* 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953), where the Court, "to avoid constitutional problems, ... construed the [INS] regulation [at issue] as inapplicable." *Landon v. Plasencia,* 459 U.S. 21, 33, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982).

The INS's denial of the opportunity to apply for bail in circumstances such as these presents serious Fifth Amendment problems. The due process clause of the Fifth Amendment incorporates against the federal government the equal protection guarantees of the Fourteenth. *Johnson v. Robison,* 415 U.S. 361, 364–65 n.4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974). In the case at bar, the INS has discriminated between lawful permanent residents arrested within the country and those detained when seeking readmission. In *Francis v. INS,* 532 F.2d 268 (2d Cir.1976) the Court of Appeals for the Second Circuit found a comparable distinction invalid. *Francis* involved section 212(c) of the Act, 8 U.S.C. § 1182(c), which provides that a lawful permanent resident "who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General" even if one of the enumerated grounds for exclusion applies. Francis was in deportation proceedings for conviction on a narcotics charge, *see* § 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11), which is also a ground for exclusion; see § 212(a)(23) of the Act, 8 U.S.C. § 1182(a)(23). He sought to apply for a section 212(c) waiver. The BIA held he was not eligible for the waiver, finding section 212(c) inapplicable to an alien in deportation proceedings.

The Court in *Francis* found that the BIA's interpretation of section 212(c) was consistent with its language. But the Court went on to find the Act violated the Fifth Amendment's equal protection component as applied. Applying a minimal scrutiny test, the Court found no legitimate governmental interest to justify distinguishing between two aliens charged with the same offense simply because one was in deportation proceedings and the other was in exclusion proceedings. The Court wrote, "[f]undamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner." *Id.* at 273.

*Francis* raises serious questions about the constitutionality of the INS's action in the case at bar. Whatever the original charges, Appah is presently in INS custody only because of a finding that he committed a deportable offense. He is distinguishable from one in deportation proceedings only because of the fortuitous circumstance that he was detained while attempting to re-enter the United States. After *Francis,* that is at least a constitutionally suspect basis for discrimination.

4. *Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), is not to the contrary. In that case the Supreme Court held that the Act permitted a permanent resident alien's excludability to be determined in exclusion proceedings, and not just in deportation proceedings. But that case involved one of the grounds for exclusion specifically enumerated in section 212(a) of the Act. Moreover, it did not involve the question of release pending final determination of status.

But I need not reach the constitutional issue because, for the foregoing reasons, I interpret the Act as requiring that the bail criteria applied in deportation proceedings be applied in the case at bar.

The case is remanded to the INS with directions that it permit Appah to apply for release on bail forthwith; and that INS judge that application by the criteria articulated in *Patel, supra.*[5]

It is SO ORDERED.

5. I recognize that the Government still contends that Appah is excludable under subsection (a)(19). But that charge was not sustained by the immigration judge. Appah's present detention arises only from the advanced finding of deportability.