USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-2055

 WILTON K. ALMON,

 Plaintiff, Appellee,

 v.

 JANET RENO, ET AL.,

 Defendants, Appellants.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Hill and Cyr, Senior Circuit Judges.

 _____________________

 Alison Marie Igoe, Trial Attorney, Office of Immigration
Litigation, with whom Frank W. Hunger, Assistant Attorney General,
U.S. Department of Justice, Civil Division, and Christopher C.
Fuller, Senior Litigation Counsel, Office of Immigration
Litigation, were on brief, for appellant.
 Randy Olen for appellee.

 ____________________

 September 21, 1999
 ____________________ TORRUELLA, Chief Judge. Petitioner-appellee Wilton K.
Almon is a native and citizen of Jamaica who entered the United
States as an immigrant on March 29, 1980, at the age of nine. On
October 24, 1996, the Immigration and Naturalization Service
("INS") issued an Order to Show Cause, charging Almon with
deportability as an aggravated felon pursuant to
 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"),
8 U.S.C. 1251(a)(2)(A)(iii). The basis of the charges of
deportability were three separate criminal convictions: (1) a
September 16, 1996 conviction for entering a dwelling with intent
to commit larceny; (2) a January 9, 1995 conviction for possession
of a stolen motor vehicle; and (3) a January 9, 1995 conviction for
assault with a dangerous weapon.
 On June 25, 1997, an immigration judge found Almon
deportable and ineligible for a 212(c) waiver of deportation by
operation of 440(d) of the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"). Almon was ordered deported to
Jamaica. The BIA affirmed the deportation order on May 1, 1997.
 Prior to April 24, 1996, Almon would have been able to
apply for a discretionary waiver of deportation under 212(c) of
the INA. See 8 U.S.C. 1182(c) (1995). However, effective
April 24, 1996, 440(d) of the AEDPA amended 212(c) and rendered
Almon ineligible for such a waiver. See AEDPA, Pub. L. No. 104-
132, Title IV, 440(d), 110 Stat. 1214, 1277 (1996).
 Almon filed a petition for a writ of habeas corpus in the
United States District Court for the District of Massachusetts,
alleging that 440(d) of the AEDPA violates his right to equal
protection by irrationally denying eligibility for 212(c) relief
to aliens who, like himself, are in deportation proceedings, while
preserving such relief for aliens in exclusion proceedings. The
district court agreed with Almon, granting his petition, and
remanding his case to the BIA for a discretionary determination of
the merits of Almon's application for relief under the old INA
 212(c). This appeal followed.
 DISCUSSION
 In order to better understand Almon's equal protection
claim, some background information is necessary. Deportable aliens
are aliens presently residing in the United States, but who are
subject to deportation on various grounds. See 8 U.S.C. 1251(a)
(1996). Excludable aliens are those who seek to enter the United
States to set up residence, and whom the Attorney General has the
power to exclude. See 8 U.S.C. 1182(a) (1996). Prior to the
passage of the AEDPA, 212(c) of the INA provided that excludable
aliens who were legal permanent residents of the United States for
seven consecutive years and who traveled abroad voluntarily and
temporarily could be re-admitted at the discretion of the Attorney
General. See supra note 2. By its terms, 212(c) discretionary
relief applied specifically and exclusively to excludable aliens
seeking readmission, and not to aliens in deportation proceedings. 
See id.
 However, in 1956, in Matter of G.A., 7 I. & N. Dec. 274
(BIA 1956), the BIA permitted a criminal alien in deportation
proceedings to apply for a 212(c) waiver. See Matter of G.A., 7
I. & N. at 275. The petitioner in that case was convicted of a
drug offense in 1947. See id. at 274. In 1952, he briefly left
the United States, and upon his return was readmitted. See id. 
The INS did not initiate deportation proceedings against G.A. until
1956. See id. From 1947, the date of his drug conviction, to
1956, G.A. did not suffer any additional convictions. See id. at
274-75. In holding that G.A. was eligible to apply for
discretionary relief under 212(c), the BIA reasoned that if the
Attorney General exercised his discretion under 212(c) and waived
the ground of excludability based upon G.A.'s 1947 criminal
conviction when G.A. sought readmission to the United States in
1952, a deportation proceeding based upon the same criminal
conviction could not thereafter be initiated. See Matter of G.A.,
7 I. & N. at 275-76.
 After the BIA's holding in Matter of G.A., resident
criminal aliens were routinely considered eligible for
discretionary relief under 212(c) if, at some point after their
convictions, they had temporarily departed the United States, been
readmitted, and were in deportation proceedings. See, e.g., Matter
of Tanori, 15 I. & N. Dec. 566, 568 (BIA 1976) ("Under section
212(c) of the Act, a waiver of the ground of inadmissibility may be
granted in a deportation proceeding when, at the time of the
alien's last entry, he was inadmissible because of the same facts
which form the basis of his deportability."); Matter of Edwards, 10
I. & N. Dec. 506 (BIA 1963) (holding that the fact that a resident
criminal alien's status may have changed from excludable to
deportable does not preclude the exercise of discretionary relief
contained in 212(c)). At the same time, the BIA declined to
extend 212(c) relief to otherwise eligible resident criminal
aliens in deportation proceedings who had not departed the country
after being convicted. See, e.g., Matter of Arias-Uribe, 13 I. &
N. Dec. 696 (BIA 1971). In this way, the BIA distinguished between
two classes of deportable aliens: those who had traveled abroad
after their convictions, and those who had never left the country.
 This distinction did not go unnoticed. In 1976, in
Francis v. INS, 532 F.2d 268 (2d Cir. 1976), the Second Circuit
held that the BIA's distinction between these two classes of
deportable aliens violated equal protection. See 532 F.2d at 273. 
Like G.A., the petitioner in Francis was in deportation proceedings
but, unlike G.A., had never left the United States at any time
after his conviction. See id. at 269. For this reason, the BIA
deemed Francis ineligible for 212(c) relief and ordered him
deported. In granting Francis's request for a declaration of his
eligibility for 212(c) relief, the Second Circuit explained that
the government had failed to suggest any reason why a deportable
alien's failure to travel abroad after a conviction should be a
crucial factor in determining his eligibility for a 212(c)
waiver. See id. at 273. Therefore, the Francis court concluded
that distinguishing between different categories of deportable
aliens based on whether they had departed and returned to the
United States was "wholly unrelated to any legitimate government
interest." Id. The remedy for this constitutional violation was
a remand to the BIA for a determination of the merits of Francis'
application for a 212(c) waiver.
 Prior to the passage of the AEDPA, Almon, like the
petitioner in Francis, would have been eligible for 212(c)
relief. See Matter of Silva, 16 I. & N. Dec. 26 (BIA 1976)
(holding that, after Francis, 212(c) relief may be granted to 
permanent resident aliens in deportation proceedings). However,
effective April 24, 1996, 440(d) of the AEDPA amended the last
sentence of 212(c) to read: "[t]his section shall not apply to an
alien who is deportable by reason of having committed [various
enumerated criminal offenses]." AEDPA 440(d), 110 Stat. 1214,
1277 (emphasis added). Although immigration judges initially
applied this exclusion from 212(c) eligibility to both excludable
and deportable criminal aliens, the BIA in In re Fuentes-Campos,
Int. Dec. 3318 (BIA 1997), interpreted 440(d) as excluding only
aliens in deportation proceedings from eligibility for 212(c)
relief. It is this interpretation of 440(d), limiting
eligibility for 212(c) relief to criminal aliens in exclusion
proceedings only, that Almon claims violates his right to equal
protection. Specifically, Almon contends that there is no
rational basis for treating two aliens convicted of exactly the
same crime differently simply because one has chosen to leave the
country while the other has not. We disagree.
 Almon first argues that the Second Circuit's holding in
Francis compels us to find the BIA's interpretation of 440(d)
violative of equal protection guarantees. However, Almon's equal
protection claim is very different from that litigated in Francis. 
First, Almon challenges a different statutory classification:
namely, the distinction between excludable and deportable aliens. 
Second, even assuming arguendo that excludable aliens and
deportable aliens are similarly situated with respect to 440(d),
the government in this case has advanced a rational and legitimate
reason for the statute's disparate treatment of excludable and
deportable aliens. We therefore reject Almon's argument to the
extent it is based on the Second Circuit's decision in Francis.
 We turn next to the merits of Almon's equal protection
claim. It is well established that a challenged classification
that does not involve a suspect class or impinge upon fundamental
rights is accorded a strong presumption of validity. See Heller v.
Doe, 509 U.S. 312, 319 (1993). Such a classification must be
upheld if it is rationally related to a legitimate governmental
purpose. See id. at 320. Moreover, under this minimal standard of
review, the government need not actually articulate at any time the
purpose or rationale supporting its classification. See id. at
320. Instead, a classification must be upheld against an equal
protection challenge "if there is any reasonably conceivable set of
facts that could provide a rational basis for the classification"
whether the basis has a foundation in the legislative record or
not. Heller, 509 U.S. at 320 (quoting FCC v. Beach Communications
Inc., 508 U.S. 307, 313 (1993)). Under this standard of review, we
conclude that there exists a rational basis for the disparate
treatment of excludable and deportable aliens under 440(d) of the
AEDPA.
 We conclude that in limiting 440(d)'s restrictions to
criminal aliens in deportation proceedings, Congress advanced the
legitimate legislative goal of expediting the deportation of
criminal aliens currently residing within our borders. See
LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998); Mattis v.
Reno, 44 F. Supp. 2d 379, 385-86 (D. Mass. 1999). But see Wallace
v. Reno, 39 F. Supp. 2d 101, 106-08 (D. Mass. 1999). The
Congressional record leading up to the enactment of the AEDPA
indicates that the number of deportable criminal aliens greatly
exceeds the number of excludable criminal aliens. See H.R. Rep.
No. 104-469(I) (1996) (1996 WL 168955 at *384-85) (reporting that
in 1995 the INS deported approximately 29,255 criminal aliens and
excluded approximately 2,738). Given these figures, the more
lenient treatment of excludable criminal aliens under 440(d)
makes rational sense. With the passage of 440(d), Congress
created an incentive for deportable criminal aliens to leave the
country without their having to be ordered to leave at the
government's expense. See LaGuerre, 164 F.3d at 1041. As the
Seventh Circuit explained: "To induce their voluntary departure, a
little carrot is dangled before them consisting of the opportunity
to seek a waiver should they seek to return to the country and by
doing so trigger exclusion proceedings." LaGuerre, 164 F.3d at
1041. Section 440(d) clearly accomplishes this legitimate
governmental purpose, and therefore must be upheld.
 CONCLUSION
 For the reasons stated above, we reverse the decision of
the district court.