Andres Antonio **CAMPOS**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 91–1427.

United States Court of Appeals, First Circuit.

Heard Oct. 10, 1991.

Decided April 13, 1992.

Rhonda Berkower, P.A.I.R. Project, with whom Daniel Kanstroom, P.A.I.R. Project, Carroll Lucht, New Haven, Conn., The Jerome N. Frank Legal Services Organization, Yale Law School, Kristina Michelsen, Rhona Silverbush and Marc Bruner were on brief, for petitioner.

Harvey Kaplan, Kaplan, O'Sullivan & Friedman, Monica Conyngham, George Lester and Foley, Hoag & Eliot, Boston, Mass., on brief for American Immigration Lawyers Ass'n and the Nat. Immigration Project of the Nat. Lawyers Guild, amici curiae.

Charles E. Pazar, Office of Immigration Litigation, Civil Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Civil Div., and Robert Kendall, Jr., Asst. Director, Washington, D.C., were on brief for respondent.

* Of the Fifth Circuit, sitting by designation.

Before CAMPBELL, Circuit Judge, BROWN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Petitioner, Andrés Antonio Campos ("Campos"), petitions for review of a final deportation order entered by the Board of Immigration Appeals ("BIA"). Petitioner argues that the Board erred in determining that he was ineligible to apply for relief from deportation pursuant to § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c). Finding no reversible error, we deny his petition for review.

### Background

Campos is a native and citizen of the Dominican Republic. He had been a lawful permanent resident of the United States since August 11, 1981. From 1981 until March 1988, Campos lived in Puerto Rico. Campos then moved to Providence, Rhode Island.

While residing in Rhode Island, Campos was convicted on February 6, 1989 in the state court for carrying a .22 caliber Bernadelli pistol, without a license, in violation of § 11–47–8 of the General Laws of Rhode Island. Campos was sentenced to 24 months imprisonment, with two months to serve, 22 months suspended, and a probation term of 22 months. Shortly thereafter, on February 16, 1989, Campos was again convicted in the state court, this time for possession of heroin with intent to distribute and possession of cocaine in violation of Rhode Island law. For these latter offenses, he was sentenced to a total of 36 months, with four months to be served concurrently with the two months previously imposed for the unlawful possession of a handgun. The remaining 36 months of the sentence were suspended, with Campos to be on probation for that period.

On June 8, 1990, the Immigration and Naturalization Service ("INS") issued an order requesting Campos to show cause why he should not be deported from the

United States. In its order, the INS asserted that Campos was deportable under provisions of the Immigration and Nationality Act "INA". Campos' state convictions for possession of cocaine and of heroin with intent to distribute allegedly made him deportable under both § 241(a)(4)(B),[1] (aggravated felony), 8 U.S.C. § 1251(a)(4)(B) [recodified as 8 U.S.C. § 1251(a)(2)(A)(iii) (1991)] and § 241(a)(11),[2] (controlled substances violation) 8 U.S.C. § 1251(a)(11) [recodified as 8 U.S.C. § 1251(a)(2)(B)(i) and (ii) (1991)] of the INA.

A deportation hearing was held on June 29, 1990 before an immigration judge. Appearing *pro se*, Campos admitted he was deportable on the grounds enumerated in the order to show cause. However, he expressed a desire to apply for relief from deportation under § 212(c) of INA, a statute giving the Attorney General discretion to admit returning aliens which has, over the years, been expanded to allow relief to aliens facing deportation. *See infra.* At that time,[3] § 212(c), codified at 8 U.S.C. § 1182(c), read as follows:

(c) Nonapplicability of subsection (a)(1) to (25), (30) and (31).

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30), and (31) of subsection (a) of this subsection.

Following Campos' request for § 212(c) relief, INS General Attorney Richard Neville amended the show cause order to include an additional charge of deportability under § 241(a)(14) for his conviction for carrying a pistol without a license.[4] The INS then took the position that the addition of this

---

1. **§ 1251 Deportable Aliens**
   **(a) Classes of deportable aliens.**
   Any alien (including an alien crewman) in the United States shall, upon the order of the Attorney General, be deported if the alien is deportable as being within one or more of the following classes of aliens:

   **(2) Criminal offenses**

   **(iii) Aggravated felony**
   Any alien who is convicted of an aggravated felony at any time after entry is deportable.

2. **§ 1251 Deportable Aliens**
   **(a) Classes of deportable aliens.**
   Any alien (including an alien crewman) in the United States shall, upon the order of an Attorney General, be deported if the alien is deportable as being within one or more of the following classes of aliens:

   **(2) Criminal offenses**

   **(B) Controlled substances**
   **(i) Conviction**
   Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.
   **(ii) Drug abusers and addicts**
   Any alien who is, or at any time after entry has been, a drug abuser or addict is deportable.

3. § 212(c) was amended by § 511(a) of the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 (Nov. 29, 1990) and now reads:
   Aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the *provisions of subsection (a) (other than subparagraphs (A), (B), (C), or (E) of paragraph (3))* ... *The first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years.* (Sentences in italics indicate what was changed by the amendment).
   8 U.S.C. § 1182(b).

4. § 241(a)(14) authorizes deportation of any alien in the United States who:
   At any time after entry, shall have been convicted of possessing or carrying in violation of any law, any firearm or destructive device (as defined in paragraphs (3) and (4), respectively, of section 921(a) of Title 18, United States Code), or any revolver or any weapon which shoots or is designed to shoot automatically or semiautomatically more than one shot without manual reloading, by a single function of the trigger, or a weapon commonly called a sawed-off shotgun.

ground of deportability removed Campos from any possibility of § 212(c) relief. The INS based this position on the fact that § 212(c) only granted the Attorney General discretion to waive certain designated grounds of alien *exclusion,* namely paragraphs (1) through (25) and paragraphs (30) and (31) of § 212(a), listing excludable aliens. Grounds for deportation were designated separately in § 241(a) of the INA, 8 U.S.C. § 1251(a). The INS thus contended that § 212(c) relief was available in deportation proceedings *only if* the ground of deportation was also one of the grounds of exclusion referenced in § 212(c). As the possession of a firearm without a license was a ground of deportation as to which there was no corresponding ground of exclusion referenced in § 212(c), the immigration judge denied the relief requested. Campos thereupon appealed from the decision of the immigration judge to the BIA.

In his appeal to the BIA, Campos did not challenge the immigration judge's findings of deportability. Satisfied that deportability had been established by clear, unequivocal and convincing evidence as required by *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) and 8 C.F.R. § 242.-14(a), the BIA dismissed Campos' appeal on April 26, 1991. Like the immigration judge, the BIA ruled that Campos was not eligible to seek discretionary § 212(c) relief, as the Attorney General only had discretion to waive the deportation of aliens deportable under a ground of deportability for which there was a comparable referenced ground of excludability.

The present petition for review of the BIA was brought to this court pursuant to INA § 242(b), 8 U.S.C. § 1252(b). We have jurisdiction to review this final deportation order pursuant to INA § 106(a)(1), 8 U.S.C. § 1105a(a)(1); *Hazzard v. INS,* 951 F.2d 435 (1st Cir.1991).

Before this court, Campos makes essentially two arguments. First, he contends that Congress never intended to deprive aliens convicted of illegal possession of a firearm of the possibility of seeking § 212(c) relief. Second, he urges that even if Congress intended to render this class of deportable alien ineligible for § 212(c) relief, such denial would violate Campos' right to equal protection of the law as secured by the Fifth and Fourteenth Amendments.

Because there are no contested factual issues in this case and we decide solely a question of law, our review is plenary. *Ardestani v. U.S. Department of Justice, INS,* 904 F.2d 1505, 1508 (11th Cir.1990).

I.

A. Whether § 212(c) Authorizes the Granting of Discretionary Relief to Aliens Convicted of Possession of a Firearm without a License.

1) Relief from deportation pursuant to § 212(c).

Both as applicable to Campos in 1990, and as since amended, § 212(c) applies expressly only to permanent resident aliens who have voluntarily traveled abroad temporarily and, upon seeking to return to their lawful unrelinquished domicile here, would be excludable under certain listed provisions, i.e. in the earlier version, the provisions of paragraphs (1) through (25) and paragraphs (30) and (31) of subsection (a).[5] Section 212(c) authorizes the Attorney General, in his discretion, to disregard these grounds of exclusion and readmit the aliens into the United States.

Although codified and written so as to apply solely to exclusion proceedings directed against returning aliens, § 212(c)'s scope has been significantly, and confusingly, expanded through judicial and administrative decisions so as to apply to deportation as well. In 1976, the Second Circuit decided in *Francis v. INS,* 532 F.2d 268 (2d Cir.1976) that the limitation of the availability of § 212(c) relief solely to aliens returning to the United States after a temporary absence was irrational and, therefore, unconstitutionally discriminatory.

---

**5.** These referenced paragraphs of subsection (a) list classes of aliens that shall be excluded from admission into the United States.

The Second Circuit held that the Constitution required the Attorney General's statutory waiver power to be made equally available in the cases of resident aliens who had never left the United States but had become the subject of deportation proceedings under the sometimes different criteria set out in § 241(a), 8 U.S.C. § 1251(a). This generous interpretation of § 212(c) was accepted by the INS in *Matter of Silva*, 16 I. & N. Dec. 26 (BIA 1976) and *Matter of Hom*, 16 I. & N. Dec. 112 (BIA 1977). This Circuit, like others, has come to accept that the right to seek discretionary § 212(c) relief may be employed in deportation proceedings by resident aliens as well as in the narrower circumstances addressed in the statutory language. *Joseph v. INS*, 909 F.2d 605, 606 n. 1 (1st Cir.1990); *Lozada v. INS*, 857 F.2d 10, 11 n. 1 (1st Cir.1988).

Although willing to follow the Second Circuit's lead and extend § 212(c) relief to deportable aliens, the BIA steadfastly ruled prior to 1990 that § 212(c) could *not* be utilized to waive *all* grounds of deportability, but only those grounds of deportability having a corresponding ground of excludability as specifically referenced in the statute. *Matter of Granados*, 16 I. & N. Dec. 726 (1979); *see also* 3 Gordon & Mailman, *Immigration Law and Procedure* § 74.02[3][b] at 74–42.[6] Thus, in that respect, the BIA continued to insist on following the statute as written. However, even as to this aspect, the BIA finally threw in the sponge in *Matter of Hernández–Casillas*, (BIA, January 11, 1990) (*Hernández–Casillas* I). In that case, the BIA reversed its 1979 decision in *Matter of Granados*, and announced that it would henceforth expand the availability of § 212(c) relief to all grounds of deportability other than any specifically negatived by the INA. The BIA explained that the limitation imposed by *Granados:*

> ... can result in the total unavailability of relief from deportation for longtime resident aliens who may not have committed offenses nearly as serious as

those of other aliens who are eligible for section 212(c) waiver.

*Matter of Hernández–Casillas* I, *supra* at 5. In overruling *Granados,* the BIA sought to invoke the same fundamental fairness/equal protection principles that had led the Second Circuit to rewrite § 212(c). The BIA concluded in effect, that § 212(c) should become a statute allowing discretionary "forgiveness" of any ground for exclusion *or* deportation.

The BIA's change of heart turned out to be short-lived. On April 6, 1990, the Commissioner of Immigration and Naturalization referred *Matter of Hernández–Casillas* I to the Attorney General for review pursuant to 8 C.F.R. § 3.1(h)(iii), and in March of 1991 the Attorney General reversed in a comprehensive opinion. *Matter of Hernández–Casillas*, Int.Dec.Att.Gen. March 18, 1991 (*Hernández–Casillas* II). Acknowledging that the BIA had for some years extended § 212(c)'s waiver authority to deportations, the Attorney General nonetheless saw no reason to permit consideration of deportation grounds lacking any corresponding, statutorily-referenced ground for excludability. To the contrary, the Attorney General felt that the BIA lacked statutory authority to extend the waiver power to grounds for deportation outside of those grounds for exclusion referenced by Congress in § 212(c). The Attorney General pointed out that the constitutional justification articulated in *Francis* and *Silva* for expansion of discretionary relief under § 212(c) to deportation proceedings was simply that the relief the statute made available to returning aliens had to be made equally available to those faced with deportation. Equal treatment was fully accorded, however, when resident aliens facing deportation could seek waivers of the same grounds as could those seeking to reenter. More was not required by equal protection principles. Indeed, to go further would flatly contravene the statutory language limiting the Attorney Gen-

---

**6.** The BIA did hold, however, that relief under this section was available to waive any ground for deportation that was substantially equivalent

to a ground of exclusion enumerated in § 212(c). *Matter of Salmon,* 16 I. & N. Dec. 734 (1978).

eral's waiver power to the grounds specifically referred to in § 212(a).

■ The Attorney General's ruling in *Matter of Hernández–Casillas* II was administratively dispositive. No precedential viability was left in *Matter of Hernández–Casillas* I. The BIA accordingly dismissed Campos' present appeal. While this court is not, of course, bound by the Attorney General's opinion, we should disregard it only if it misconstrues the law or the Constitution. We do not believe that it does.

### 2) The Enactment of ADDA and IMMACT.

■ Campos argues that by enacting the Anti–Drug Abuse Act of 1988 (ADDA) Pub.L. No. 100–690, 102 Stat. 4181 and the Immigration Act of 1990, (IMMACT) Pub.L. No. 101–649, 104 Stat. 4978 (Nov. 29, 1990) Congress demonstrated its express intent to make § 212(c) relief available to aliens deportable for illegal possession of a firearm. Prior to November 18, 1988, the mere illegal possession of any firearm was not a ground for deportation. Only the possession of a machine gun or sawed off shotgun was deportable. However, § 7348 of ADDA amended INA's § 241(a)(14) and made the possession of a firearm in violation of any law a deportable offense. Campos argues that whatever justification existed for withholding possible § 212(c) relief to those facing deportation under a law limited solely to gangster-type weapons like machine guns and sawed off shotguns, no similar rationale existed after the 1988 amendment authorized deportation for the illegal possession of *any* firearms. We are urged to find that by so greatly enlarging the basis for deportation for illegal firearm possession, Congress manifested, at least indirectly, its expectation that individual hardship cases of that nature would henceforth be subject to § 212(c) waiver.

But this argument, and variations of it urged upon us, must face the reality that Congress has never changed the statute to encompass this or other deportable offenses not encompassed by the grounds for exclusion referenced in § 212(c). The amendment making the illegal possession of *any* firearm a ground for deportation did not alter the scope of § 212(c). The amendment itself showed only that Congress believed such offenses were now serious enough to warrant deportation. What, if anything, Congress may have thought on the issue of discretionary relief is simply unknown, as no amendment clarifying this aspect of the matter was proposed or enacted. Rather, the limitations upon the grant of discretionary power to the Attorney General found in § 212(c) remained unchanged, and it is, therefore, difficult to avoid the inference that Congress, for whatever reason, was content to continue the express restriction contained in § 212(c).[7]

Campos' second argument is based on the IMMACT. On November 29, 1990, § 511(a) of IMMACT amended § 212(c) to preclude the Attorney General from granting waivers to "alien[s] ... convicted of an aggravated felony and ... [who have] served a term of imprisonment of at least 5 years." Campos contends that by *precluding* relief in those instances, Congress showed its intent to make only the most serious firearm offenders, those whose crime constitute an aggravated felony and which resulted in a prison stay greater than five years, ineligible for § 212(c) relief. Campos bolsters his argument by noting that prior to IMMACT the BIA had decided *Hernández–Casillas* I on January 11, 1990, reversing its former position and extending the availability of § 212(c) relief to all grounds of deportability except ones specifically precluded by law.

This argument, although more persuasive than the first, continues to fly in the face of the specific language of § 212(c). The relevant provision, as worded at the time of Campos' case, allowed

---

**7.** We note that by 1988 the BIA had for a decade or more been treating § 212(c) as permitting deportation relief only as to grounds for which there was an appropriate corollary ground of exclusion under § 212(a). Clearly if someone wanted a different approach, legislative change was needed.

admission to the United States in the Attorney General's discretion "... without regard to the provisions of paragraphs (1)–(25), (30) and (31) of subsection (a) of this subsection." Former 8 U.S.C. § 1182(c). The referenced provisions in subsection (a) list a host of grounds for excluding aliens. They do not list grounds for deportation, which appear elsewhere, and they do not include the unlicensed possession of firearms as a ground for exclusion. Congress could easily have changed or enlarged this listing in 1988 or 1990 but chose to do neither. Since Campos' deportability rests entirely on grounds not encompassed within § 212, Campos' arguments would require us to read nonexistent language into § 212(c) on the shaky supposition that, although Congress made no directly relevant statutory change, it must be presumed somehow to have signaled that a statute saying one thing should now—although unchanged—be understood to say something else.[8] We see no basis upon which to make any such presumption. While Congress forbade the granting of § 212(c) relief to aggravated felons who had served prison terms of at least five years, it said nothing about wanting to enlarge the relief authorized under § 212(c). By leaving the exceedingly specific language of § 212(c) substantially unchanged, it can only be said to have expressed a continued desire to limit § 212(c) relief to the listed grounds of exclusion.

We agree with Campos that the combined effect of § 212(c) and the interpretation in *Francis* and its aftermath, is to create an untidy patchwork, even, one might say, a mess. It is hard to imagine that a congressman or senator who

thought about the matter would be pleased with the present state of affairs. But we think the most propitious means of improvement lies with Congress. Further speculative tinkering by courts with a statute that says one thing but is supposed to mean another will likely as not result in even more confusion. Courts have no license to rewrite legislation merely because it is poorly framed. While most legislators might agree that the present state of affairs is undesirable, all would not agree on what steps to take to reform it. Courts are not the proper bodies to take on such tasks.

Thus we do not believe the Attorney General erred by attributing to Congress no visible intention to expand the relief set out in § 212(c) beyond its express terms. Merely by indicating its desire to refuse relief to certain aggravated felons, Congress did not indicate a desire to expand the availability of § 212(c) relief beyond that expressly set out in § 212(c) itself. Clearly if any such result was intended, Congress was required by all normal canons to have amended § 212(c). This it failed to do. We are satisfied that the BIA's current interpretation of § 212(c) is supported, and that adoption of petitioner's position, no matter how reasonable it may seem for purposes of achieving overall consistency, is not justified either by the terms or history of the legislation.

B. Whether the Denial of § 212(c) Eligibility Violates Campos' Right to Equal Protection Secured by the Fifth and Fourteenth Amendment.

Campos and the *amici* argue that distinguishing between aliens deportable under § 241(a)(14) for mere possession of a fire-

---

8. While *Hernández–Casillas* I, decided January 11, 1990, did indicate that the BIA had adopted Campos' construction of § 212(c), this interpretation followed eleven years during which the BIA had construed the statute in the same manner adopted by the Attorney General in his 1991 opinion overruling *Hernández–Casillas* I. Thus when it enacted IMMACT on November 29, 1990, Congress cannot be said to have relied on a well-settled administrative interpretation of long duration. Indeed, review by the Attorney General of *Hernández–Casillas* I was sought by the Commissioner of the INS on April 6, 1990, several months *before* passage of IMMACT.

Any legislator who inquired in the summer of 1990 as to whether or not waivers were available in the present situation would have been told by a conscientious lawyer that the reach of § 212(c) was still unsettled administratively. It cannot be reasonably contended, therefore, that Congress relied upon or impliedly endorsed the interpretation Campos now puts forward. Especially is this so where the statutory language of § 212(c) is absolutely explicit as to the scope of the waiver power, which clearly does not encompass the deportability ground that Campos seeks to challenge.

arm, and aliens deportable for trafficking in firearms, or for the use of a firearm in committing armed robbery, assault and battery or murder, for purposes of determining § 212(c) relief eligibility, violates the Constitution's guarantee to equal protection of the law.

■ Under well-established principles, a challenged statute that does not employ a suspect classification or impinge upon fundamental rights must be upheld if it is rationally related to a legitimate governmental purpose. *Whiting v. Town of Westerly*, 942 F.2d 18, 23 (1st Cir.1991). Campos contends that this classification has no rational relationship to any legitimate governmental purpose or policy, and that it will encourage criminally minded aliens who possess illegal firearms to use such weapons in trafficking or to commit crimes with such weapons so they become eligible for § 212(c).

■ Lawful permanent resident aliens like Campos enjoy, of course, the full protection of the United States Constitution. *Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976).

> [O]nce an alien lawfully enters and resides in this country, he becomes vested with the rights guaranteed to all people within our borders. Such rights include those protected by the First and Fourth Amendments and by the due process clause of the Fourteenth Amendment. None of these provisions acknowledges any distinctions between citizens and resident aliens.

*Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n. 5, 73 S.Ct. 472, 477 n. 5, 97 L.Ed. 576 (1953). One such constitutional guarantee that applies to aliens as well as citizens is the promise of equal protection of the laws. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Francis v. INS*, 532 F.2d 268 at 272.

Under the equal protection clause of the Fourteenth Amendment, made applicable to the federal government through the due process clause of the Fifth Amendment, distinctions in the law between classes of individuals must have a rational basis. *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). This means that the classification drawn must have a rational relationship to some legitimate government interest. *Stanton v. Stanton*, 421 U.S. 7, 14, 95 S.Ct. 1373, 1377–78, 43 L.Ed.2d 688 (1975).

■ Congress, however, has plenary power to legislate who may enter the United States and who may not. *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). The test for determining the constitutionality of an immigration law provision is whether it is based upon a "facially legitimate and *bona fide* reason." *Fiallo v. Bell*, 430 U.S. at 794, 97 S.Ct. at 1479. Once a facially legitimate and *bona fide* reason is found, courts will neither look behind the exercise of discretion, nor test it by balancing its justification against the constitutional interest asserted by those challenging the statute. *Fiallo v. Bell*, 430 U.S. at 794–795, 97 S.Ct. at 1479. "[T]he conditions of entry for every alien, ... the right to terminate hospitality to aliens, the grounds on which such determination shall be based, have been recognized as matters solely for the responsibility of Congress and wholly outside the power of this Court to control." *Id.* at 796, 97 S.Ct. at 1480 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 596–597, 72 S.Ct. 512, 522, 96 L.Ed. 586 (Frankfurter, J., concurring)).

■ We cannot say that it is absurd that for purposes of discretionary deportation review Congress chooses to treat different crimes differently. Campos is being treated no differently from any other alien convicted of a crime that is a ground for deportation but has no corresponding ground for exclusion. Given the statute's starting premise, which was to address the problem of returning aliens, we cannot say the current reading or purpose is irrational. To be sure, when to avoid perceived equal protection problems the statute was stretched beyond its language to apply to deportation proceedings, problems crept in. If impatience with the legislative language had not resulted in adding nonexistent pro-

visions to the statute in the first place, Congress would likely have recognized the defects and long ago repaired any problems at the instance of the Attorney General, the INS and those concerned with the welfare of resident aliens. The question now becomes whether to engage in a second judicial rewriting of the statute in order to improve upon the first rewriting. This would be legislation pure and simple. As a starting point, there is not even the justification of linguistic ambiguity. Continued judicial redrafting simply insures that the statute will less and less be the recognizable product of the legislative will. We think a statute of this detailed nature is best left to the ministrations of the Congress. We decline to tinker further.

*The petition for review is denied and the deportation order is enforced.*