Jean Camille Chamblin v. INS        CV-98-097-JD 06/08/99   P

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**


Jean Camille Chamblin,
a/k/a John Chamblin

          v.                          Civil No. 98-97-JD

Immigration and
Naturalization Service


**REPORT AND RECOMMENDATION**

Before me for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) is the petition for writ of habeas corpus

filed by Jean Camille Chamblin, a citizen of Haiti, pursuant to

28 U.S.C. § 2241, relating to his claim that he is entitled to a

waiver of deportation under former section 212(c) of the

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c)

(1988) (repealed).  Chamblin also seeks either immediate release,

or a remand to an Immigration Judge for determination of whether

he should be released, from detention pending the resolution of

his § 212(c) application.[1]  For the reasons set forth below, I

_____

    [1]His request for release from detention is made not only in
the habeas petition (document no. 16) and in the Memorandum of
Law in Support of the habeas petition (document no. 18), but also
in a "Motion for Release and Detention Authority Generally," a
"Motion Addendum to his Constitutional Claims of his Writ of
Habeas Corpus," a "Petitioner's Cognizable Issues for Release
Pending a Hearing on his Constitutional Claims," and a "Response
to Decision of Sept. 9, 1998 Order" (document nos. 9, 12, 19 and
24, respectively) which provide support for the relief sought.
Because Chamblin seeks release, or a remand to an Immigration
Judge to determine his eligibility for release, as part of the
habeas relief requested, and because he was unrepresented by
counsel at the time the various papers were filed, I will
construe all these documents as constituting his petition for a
writ of habeas corpus. See Estelle v. Gamble, 429 U.S. 97, 106
(1976)(requiring pro se pleadings be construed liberally in favor

recommend that Chamblin's petition for writ of habeas corpus be granted. Specifically, I recommend that the 212(c) petition be remanded to the Board of Immigration Appeals ("BIA") for consideration in accordance with Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999), and that Chamblin receive a bail hearing before an Immigration Judge within 30 days of the date of acceptance of this Report and Recommendation.

## Background

Chamblin is a Haitian national who entered the United States lawfully with other members of his family at age fourteen, in December 1970. Chamblin became a permanent resident alien, and English is allegedly his only language. He married an American in May 1980. The couple has a son and owns property in Northwood, New Hampshire. Chamblin is a Type I diabetic, requiring daily injections of insulin. He is at risk of blindness due to diabetic retinopathy.

Between 1974 and 1995, Chamblin accumulated a history of criminal convictions in the United States, primarily thefts and alcohol-related driving offenses. His record includes, among other things: (1) a 1979 conviction of breaking and entering; (2) a 1981 conviction of stealing a bottle of orange juice; and (3) a 1995 conviction of theft of several buckets of driveway sealant, for which he received a three-and-one-half to seven year sentence in the New Hampshire State Prison.

---

of that party).

2

On May 17, 1990, respondent Immigration and Naturalization Service ("INS") sought to deport Chamblin based on the 1979 and 1981 convictions, which it determined were crimes of "moral turpitude." After the 1995 theft conviction, the INS filed an additional charge of deportability based on an "aggravated felony," since Chamblin had received a sentence of three-and-one-half to seven years imprisonment. See 8 U.S.C. § 1101(a)(43)(G) (aggravated felonies include theft offenses for which term of imprisonment is at least five years, regardless of any suspension of sentence). The INS issued a detainer on Chamblin on November 8, 1995.

An initial deportation hearing was held on June 4, 1990, at which time Chamblin applied for relief from deportation under former section 212(c) of the INA, 8 U.S.C. § 1182(c) (1988). While Chamblin's petition for section 212(c) relief was pending, on April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996). Section 440(d) of AEDPA eliminated the possibility of section 212(c) relief for persons convicted of, among other things, aggravated felonies.

Thereafter, on April 30, 1996, the Immigration Judge denied the application for section 212(c) relief and ordered Chamblin deported. The Immigration Judge determined, in pertinent part, that the 1995 driveway sealant theft was an aggravated felony, and that AEDPA rendered Chamblin ineligible for a section 212(c) waiver of deportation.

3

Chamblin appealed the Immigration Judge's decision to the BIA, and on April 25, 1997, the BIA affirmed the Immigration Judge's decision. The BIA specifically upheld the finding that Chamblin was statutorily ineligible for section 212(c) relief based on section 440(d) of AEDPA, which it applied retroactively to Chamblin's section 212(c) application.

Meanwhile, Chamblin was incarcerated on his 1995 theft conviction, with a minimum parole date of September 7, 1998. On February 2, 1998, the State moved to suspend the balance of Chamblin's sentence and to release Chamblin into INS custody for deportation. A State court judge granted that motion on April 6, 1998. The INS initially continued Chamblin's detention at the Hillsborough County House of Corrections, but recently transferred him out of state.

## Discussion

In this habeas petition, Chamblin contends that he has been denied constitutional rights in the course of his deportation proceedings. While Respondent, the INS, argues here that the regulation of aliens is an inherent sovereign power over which the judiciary has very little control, immigration jurisprudence clearly provides a role for judicial review of the methods chosen to implement that power. See Reno v. Flores, 507 U.S. 292, 305-06 (1993); Landon v. Plasencia, 459 U.S. 21, 31 (1982); Campos v. INS, 961 F.2d 309, 316 (1st Cir. 1992).

> The power to expel aliens, being
> essentially a power of the political
> branches of government, the legislative
> and executive, may be exercised entirely

4

> through executive officers, "with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." This power is, of course, subject to judicial intervention under the "paramount law of the Constitution."

Carlson v. Landon, 342 U.S. 524, 537 (1952) (citations omitted). At issue in this habeas petition is not whether Chamblin should be detained or ultimately deported, but whether he is being treated during the course of his removal proceedings in a manner which does not violate the Constitution. As this court clearly has the authority to make such a determination, the various bases for habeas relief sought are addressed below, in turn.

## A. His § 212(c) Application.

Chamblin contends that the INS improperly applied section 440(d) of AEDPA retroactively to preclude consideration of the merits of his application for a waiver of deportation under former section 212(c) of the INA. Chamblin requests that his application for section 212(c) relief be remanded to the BIA for further proceedings.

The INS has conceded that the result of this case is controlled by Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999). See Respondent's [Second] Amended Return at 2-3 (document no. 33). In Goncalves, the First Circuit held that district courts have jurisdiction under 28 U.S.C. § 2241 to review a challenge such as Chamblin's. In addition, the court held that section 440(d) of AEDPA does not apply retroactively to aliens whose underlying applications for

5

section 212(c) relief were pending on the date of AEDPA's enactment.  Cf. Wright v. Ouellette, 171 F.3d 8, 12 (1st Cir. 1999) (AEDPA section 440(d) renders alien statutorily ineligible for BIA's reconsideration of appeal of section 212(c) petition where motion to reconsider was filed after AEDPA's effective date).  The jurisdictional holding in Goncalves was based on Congress's failure, in amending section 242(g) of INA, 8 U.S.C. § 1252(g) (1994 ed., Supp. III), as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), to express an intent to eliminate habeas corpus review under 28 U.S.C. § 2241.  See Goncalves, 144 F.3d at 122-23.  The Supreme Court denied the Government's petition for writ of certiorari in Goncalves in March 1999.  The Second Circuit reached the same result as Goncalves in Henderson v. INS, 157 F.3d 106 (2d Cir. 1998), and the Supreme Court denied certiorari in that case, as well.  See 119 S. Ct. 1141 (1999).

Shortly before denying certiorari in Goncalves, the Court issued Reno v. American-Arab Anti-Discrimination Committee ("AADC"), __ U.S. __, 119 S. Ct. 936 (1999), and vacated a judgment of the Ninth Circuit in INS v. Magaña-Pizano, see id., __ U.S. __, 119 S. Ct. 1137 (1999).  The INS has not argued that either action calls into question the First Circuit's Goncalves decision.  Nor is there cause for such a finding.

AADC involved a group of aliens who claimed that they were victims of selective enforcement of immigration laws in violation of their First and Fifth Amendment rights, because of their

6

membership in an organization that advocated violence, "world communism," and property damage. AADC, 119 S. Ct. at 938-39. The aliens obtained an injunction preventing the Government from completing deportation proceedings against them. See id. at 939. The Ninth Circuit upheld the district court order over the Government's objection that 8 U.S.C. § 1252(g) (1994, Supp. III) deprived the federal courts of jurisdiction. See AADC, 119 S. Ct. at 939 (citing American-Arab Anti-Discrimination Comm. v. Reno, 119 F.3d 1367 (9th Cir. 1997)).

The Supreme Court in AADC reversed and ordered the injunction vacated. The Court held that 8 U.S.C. § 1252(g), as amended by IIRIRA, stripped the district court of jurisdiction, since it provides that "no court shall have jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." The Court construed the provision to apply only to three narrowly defined, discrete actions: the Attorney General's decision or action to "'commence proceedings, adjudicate cases, or execute removal orders.'" AADC, 119 S. Ct. at 943 (emphasis in original) (quoting 8 U.S.C. § 1252(g)). The aliens' selective prosecution challenge failed, because the court concluded that it fell "squarely within § 1252(g)" as a decision to commence proceedings. See id. at 945. The doctrine of constitutional doubt did not necessitate a different result because illegal aliens generally do not have a right to assert a selective

7

enforcement defense against deportation, and this case did not present any exception to that general rule. See id. at 947.

The Supreme Court's action in AADC does not affect Goncalves. A habeas corpus challenge to the INS's denial of a section 212(c) waiver application based on a faulty interpretation of AEDPA section 440(d) is not a challenge to the Attorney General's discretionary decision to commence proceedings, adjudicate cases, or execute a removal order. Cf. AADC, 119 S. Ct. at 943 (three discrete categories under section 1252(g) do not include, for example, challenges to decisions to: open investigations, surveil suspects, reschedule hearings, refuse to reconsider final orders, or include specific provisions in final deportation orders).

The Supreme Court followed up on its AADC decision by vacating the Ninth Circuit's Magaña-Pizano decision and remanding it for reconsideration in light of AADC. In Magaña-Pizano, the Ninth Circuit reversed the lower court's dismissal of a challenge to the INS's decision to pretermit consideration of the merits of a section 212(c) waiver application.

The key distinction between Magaña-Pizano and Goncalves is the courts' reasoning on the jurisdictional issue, and this factor underlies the Supreme Court's decision to vacate and order reconsideration in Magaña-Pizano, while simply denying certiorari in Goncalves. Constrained by pre-AADC Ninth Circuit precedent in Hose v. INS, 141 F.3d 932, 935 (9th Cir. 1998), rehearing en banc granted 161 F.3d 1225 (9th Cir. 1998) the Magaña-Pizano panel

8

construed section 1252(g) to divest federal court jurisdiction over all claims in immigration proceedings, not just challenges to the three discretionary functions identified by the Court in AADC. See Magaña-Pizano, 152 F.3d at 1217. As a result, the Magaña-Pizano court found that the provision violated the constitutional prohibition on the suspension of the writ of habeas corpus. See id. at 1220.

Unlike the Ninth Circuit, the First Circuit did not include any analysis in its decision suggesting that section 1252 obliterated federal jurisdiction over all aspects of deportation proceedings for cases pending prior to the enactment of AEDPA. The Goncalves court did not need to resort to the Suspension Clause to find residual habeas corpus jurisdiction over the petitioner's challenge under 28 U.S.C. § 2241. I conclude that the Court denied certiorari in Goncalves while vacating the judgment in Magaña-Pizano because of the Ninth Circuit's broad interpretation of the jurisdictional limitations in 8 U.S.C. § 1252(g), predicated on Hose v. INS, 141 F.3d 932, 935 (9th Cir. 1998), and not because of the Ninth Circuit's holding regarding the availability of jurisdiction under 28 U.S.C. § 2241. Accord Diaz-Zaldierna v. Fasano, __ F. Supp. 2d __, 1999 WL 199110, *3 & n.4 (S.D. Cal. March 16, 1999) (citing, inter alia, Walters v. Reno, 145 F.3d 1032, 1052 (9th Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999)). Thus, the jurisdictional holding in Goncalves remains good law, and the case is binding precedent in the First Circuit on the merits of Chamblin's petition for writ of habeas

9

corpus.

Chamblin is similarly situated to the petitioner in Goncalves. His application for section 212(c) relief was pending upon AEDPA's effective date, and the BIA forewent consideration of the merits of his application because of its erroneous ruling on AEDPA's retroactivity. The appropriate remedy for a petitioner in a case like Goncalves is a remand of the section 212(c) application to the BIA for its discretionary review on the merits. See Goncalves, 144 F.3d at 134. Such relief should be granted in this case.

Accordingly, I recommend the petition for writ of habeas corpus be granted with respect to Chamblin's request for consideration of his § 212(c) application for relief from deportation. The § 212(c) application should be remanded to the BIA for a discretionary ruling on the merits of the application.

**B. His § 1226(c) Detention.**

In this habeas petition, Chamblin also argues that he is entitled either to release on bail pending the resolution of his § 212(c) application, or to a bail hearing before an immigration judge, because INA § 236(c), 8 U.S.C. § 1226(c) (1999), the statute presently requiring his detention without possibility of release on bond, is facially invalid as a matter of substantive and procedural due process. The statute at issue provides for mandatory detention of aliens who are deportable because they committed certain specified offenses, including an aggravated felony. See 8 U.S.C. § 1226(c)(1)(B); see also id.,

10

§§ 1227(a)(2)(A)(ii) & (iii).[2]  In Chamblin's deportation proceedings, the BIA upheld the decision of the Immigration Judge that Chamblin's driveway sealant theft was an aggravated felony. Chamblin does not contest that determination here.  Instead he contests § 1226(c)'s provision mandating his detention based solely upon his aggravated felony conviction.  Chamblin asserts that this provision violates his due process rights because it provides no individualized determination of the need for his detention.

1.  Jurisdiction.

Chamblin's petition raises as a preliminary issue whether this court has jurisdiction to review the issues presented. Federal courts have habeas jurisdiction to consider constitutional questions regarding the legality of detention by

_____

[2]The detention statute provides, in pertinent part:

**(c) Detention of criminal aliens**
   **(1) Custody**
   The Attorney General shall take into custody any alien who -
      . . .
         **(B)** is deportable by reason of having committed any offense covered in section . . . 1227(a)(2)(A)(ii) [two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct], (A)(iii)[aggravated felonies]. . .

8 U.S.C. § 1226(c)(1)(B) (1999).  Subsection (c)(2) provides the Attorney General with the discretion to release criminal aliens on specified conditions only if she decides that release is necessary for certain, narrowly-defined purposes, including witness protection.  See 8 U.S.C. § 1226(c)(2) (1999).  None of the categories of releaseable aliens set forth in section 1226(c)(2) applies in Chamblin's case.

11

executive branch officials, because such questions are at the "historical core of the Suspension Clause." <u>Goncalves</u>, 144 F.3d at 123. The fact that Chamblin challenges a statutory provision does not preclude habeas review. "The language of § 2241 itself does not contemplate a limitation of jurisdiction only to constitutional claims; instead, it contemplates challenges based on the 'Constitution or laws or treaties of the United States.'" <u>Id.</u> at 123-24 (quoting 28 U.S.C. § 2241). Habeas review is available, therefore, to challenge the constitutionality of § 1226(c). <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Hermanowski v. Farquharson</u>, 39 F. Supp. 2d. 148, 1999 WL 111520, at *6 (D.R.I. March 1, 1999).[3]

2. The Constitutionality of § 1226(c).

### a. Scope of Judicial Inquiry

As a threshold matter, the INS argues that the Government's plenary power over immigration matters prevents this court from reviewing § 1226(c), because it falls within the sovereign's inherent power to regulate aliens. Although Congress' power over

---

[3]Furthermore, federal jurisdiction under 28 U.S.C. § 2241 to review Chamblin's facial challenge to the mandatory detention statute has survived the enactment of 8 U.S.C. § 1252(g) (1994 ed., Supp. III). As discussed in more detail above, § 1252(g) eliminates federal jurisdiction over challenges to three narrowly defined, discrete categories: the Attorney General's decision or action to "'<u>commence</u> proceedings, <u>adjudicate</u> cases, or <u>execute</u> removal orders.'" <u>AADC</u>, 119 S. Ct. at 943 (emphasis in original) (quoting 8 U.S.C. § 1252(g)). That provision does not limit federal jurisdiction over Chamblin's constitutional challenge, since the petition does not involve a challenge to a discretionary decision at all. The statute at issue utterly precludes the Attorney General from exercising any discretion to release Chamblin pending conclusion of his deportation proceedings. Accordingly, I have jurisdiction to consider the issues raised in Chamblin's petition.

the admission and expulsion of aliens is great and generally exempt from judicial review, see Matthews v. Diaz, 426 U.S. 67, 80-81 (1976) (summarizing the historical purposes for relegating the power over admission and removal of aliens to the political branches of the Federal Government); Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953) (recognizing the sovereign power to control immigration matters is "largely immune from judicial control"), aliens do retain rights guaranteed by the Constitution to protect them in deportation proceedings. See Plyer v. Doe, 457 U.S. 202, 210-12 (1982) (holding that the Fifth Amendment's due process clause applies to all persons within the territorial confines of the United States); Plasencia, 459 U.S. at 26-27, 32-33 (stating an alien's due process rights); see also Campos, 961 F.2d at 316 (citing authority to explain how the First, Fourth, Fifth and Fourteenth Amendments apply to resident aliens as well as citizens); Hermanowski, 1999 WL 111520, at *8-9 (describing the contours of a deportable alien's constitutional rights). As a lawful permanent resident alien, Chamblin may assert his due process rights to limit the Government's power in his deportation proceedings. See Plasencia 459 U.S. at 32-33; see also Hermanowski 1999 WL 111520, at *9 (explaining how a deportable alien has greater procedural and substantive rights than excludable aliens). The issue before the court, therefore, is not whether ultimately Chamblin should be detained, or eventually removed, which are the substantive immigration decisions properly left to the INS, but whether it violates due process to hold

13

Chamblin indefinitely, without any individualized determination of the need for his detention, while his removal proceedings are pending.

### b. Standard of Review.

In this challenge to the facial validity of § 1226(c)'s mandatory detention provision, both Chamblin and the INS submit, and I agree, that Chamblin must "establish that no set of circumstances exists under which [it] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987); see also Flores, 507 U.S. at 301 (applying Salerno to a facial challenge to an INS regulation). The INS argues, however, that the statute must only pass a rational basis test, relying on Fiallo v. Bell, 430 U.S. 787, 794-95 (1977) and Campos, 961 F.2d at 316. Under this standard the INS argues, § 1226(c) is constitutional if it is based on a facially legitimate and bona fide reason, see Fiallo, 430 U.S. at 794, and it is unconstitutional only if it is wholly irrational, i.e., if there is no circumstance in which it would be rational to detain a criminal alien pending a decision regarding his removal. This argument misreads Fiallo as well as § 1226(c).

In Fiallo, the Court upheld an immigration statute because it was based on a "'facially legitimate and bona fide reason.'" Id. The Court appears to have based that decision on two reasons. First and most significantly, in Fiallo the substantive portion of an immigration statute was challenged. The aliens there sought to have the Court find unconstitutional a basis for

14

removal.  The Court declined to look behind the "broad congressional policy choices" which were based on legitimate reasons, Fiallo, 430 U.S. at 795, and upheld a statutory provision excluding the relationship between a natural father and his illegitimate child from preferential immigration status.  See id. at 799-800.  Second, in reaching that conclusion, the Court found that the statute did not implicate any fundamental right, which would have warranted a higher standard of review.  See id. at 794-95 and 795 n.6 (rejecting Justice Marshall's dissent because its "basic premise" that the statute implicated a fundamental right was erroneous).  The Court clearly explained that it found "no indication in [its] prior cases that the scope of judicial review is a function of the nature of the policy choice at issue."  Id. at 796.[4]

In contrast, Chamblin here does not challenge the policy choice to detain, or ultimately remove, an alien depending on his criminal history.  That policy choice is properly left to the political branches of Government and, were it the subject of this habeas petition, would be reviewed to determine whether it was based on a facially legitimate and bona fide reason.  Instead,

---

[4]Similarly, in Campos, an alien challenged the basis for denying him § 212(c) relief, claiming that it violated due process.  The court found that the statute's categorization of aliens did not create suspect classes, which would have been protected by the equal protection clause.  With no fundamental right infringed, the court reviewed the substantive policy decisions reflected in the statute under Fiallo's "facially legitimate and bona fide" reason test.  See Campos, 961 F.2d at 316 (finding constitutional Congress' decision to treat different crimes differently for purposes of removing aliens).

Chamblin challenges how that policy decision is effected, specifically, Congress' decision to automatically and indefinitely detain an alien while removal proceedings are pending simply because of that alien's criminal record. Thus, Chamblin is challenging how the statute is implemented, not the policy decision to detain.

Second, the statute very clearly infringes upon the fundamental right to liberty. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); Ingraham v. Wright, 430 U.S. 651, 673-74 (1977) ("While the contours of this historic liberty interest in the context of our federal system of government have not been defined precisely, they always have been thought to encompass freedom from bodily restraint and punishment."); see also Hermanowski, 1999 WL 111520, at *9 ("Although the outer limits of such rights in the case of a deportable alien are murky, it is clear that even deportable aliens enjoy some measure of the due process right to be free from unreasonably detention by the government."). When a fundamental right is involved, the statute must be narrowly tailored to advance an important state interest. See Flores, 507 U.S. at 300, 305 ("But narrow tailoring is required only when fundamental rights are involved.").

Because Chamblin is challenging how the statute operates to infringe upon his liberty, it is more appropriately reviewed

16

under the test annunciated in Salerno, where the Bail Reform Act's provision for pretrial detention of arrestees was challenged. See Salerno, 481 U.S. at 746-47. Cases which have addressed the constitutionality of detaining aliens have applied the higher level of scrutiny set forth in Salerno, which dealt with the constitutionality of the Bail Reform Act. See e.g. Hermanowski, 1999 WL 111520, at *10; Martinez v. Greene, 28 F. Supp. 2d 1275, 1281 (D.Colo. 1998); Cholak v. United States, 1998 WL 249222, *8 (E.D. La. May 15, 1998) (reviewing constitutionality of continued detention under former § 241(a), 8 U.S.C. § 1231(a)(1)(A)); Caballero v. Caplinger, 914 F. Supp. 1374, 1377 (E.D. La. 1996) (reviewing § 1252 detention where alien did not rebut the presumption); cf. Diaz-Zaldierna v. Fasano, __ F. Supp. 2d __, 1999 WL 199110 (S.D. Cal. March 16, 1999) (claiming to reject strict scrutiny standard to review § 1226(c) and then applying Salerno's higher standard). I am persuaded by the rationale of the several courts cited above which have determined that Salerno rather than Fiallo provides the correct analytical framework.

Finally, the INS argues that § 1226(c) can be found unconstitutional only if under no circumstances could an alien be rationally detained. Again, the policy choice to detain an alien pending final determination of removability is not the issue before the court. To find § 1226(c) unconstitutional does not require a conclusion that an alien could never be rationally detained. Rather, § 1226(c)'s constitutionality turns on whether

17

detention may be mandated regardless of the circumstances.

### c. Chamblin's Due Process Rights.

It is well settled that deportable aliens may be detained without offending the Constitution. See Salerno, 481 U.S. at 748 (citing Carlson, 342 U.S. at 537-42 to explain that there is "no absolute constitutional barrier to detention of potentially dangerous resident aliens pending deportation proceedings"). Whether such detention amounts to arbitrary governmental action in violation of the due process clause depends on whether the action is narrowly tailored to serve an important governmental interest. See County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1716 (1998) (citing authority to explain "the touchstone of due process is protection of the individual against arbitrary action of government"); see also Flores, 507 U.S. at 302.

> This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty," . . .. When government action depriving a person of life, liberty or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as "procedural" due process.

Salerno, 481 U.S. at 746 (citations and quotations omitted). Chamblin's facial attack on § 1226(c)'s constitutionality, therefore, must first establish that it violates his substantive

18

due process rights.  If § 1226(c) survives substantive due process scrutiny, then it must clear the procedural due process hurdle to be upheld as constitutional.  See id.; see also Flores, 507 U.S. at 306 (turning to the procedural due process inquiry after finding no substantive due process violation); see also Hermanowski, 1999 WL 111520, at *9 (analyzing an alien's substantive due process rights in deportation proceedings before addressing any procedural rights).

(i)  Substantive Due Process

The first step in a substantive due process analysis is to determine the precise constitutional right allegedly violated by the arbitrary and oppressive governmental action.  See Flores, 507 U.S. at 302 ("'Substantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'") (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)).  To that end, courts are instructed "to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake," Collins, 503 U.S. at 125, to avoid expanding the concept of substantive due process.  See id. (explaining how "guideposts for responsible decision making in this unchartered area are scarce and open-ended").  Here, Chamblin does not challenge the fact that he is detained, but rather the fact that he is detained solely because of his aggravated felony conviction.  The alleged substantive

19

liberty interest, therefore, is a right to an individualized determination of whether or not detention is appropriate. Cf. Hermanowski, 1999 WL 111520, at *9 (finding "firm doctrinal ground upon which" to base a substantive due process liberty interest in deportation proceedings).

Whether Chamblin's detention violates his substantive due process rights depends upon: (i) whether the restriction on his liberty is impermissible punishment, or permissible regulation incident to some other legitimate government purpose; and (ii) whether the detention is excessive in relation to the "alternative purpose" proffered. See Salerno, 481 U.S. at 747; see also Hermanowski, 1999 WL 111520, at *9 (citing authority); Martinez, 28 F. Supp. 2d at 1282. It is undisputed that Chamblin is being held as part of his deportation proceedings, which are regulatory, not punitive, in nature. See id.; see also Hermanowski, 1999 WL 111520, at 10. The INS argues, and neither Chamblin nor case law refute, that his detention serves the legitimate governmental interests of preventing his abscondment and reducing the risk of danger he presents to society. Section 1226(c), therefore, is constitutional unless Chamblin's detention is excessive in relation to the stated purposes for it.

After carefully considering the facts and circumstances of this case, I find that § 1226(c)'s mandatory detention provision is excessive in relation to the legitimate goals it is designed to advance. The record suggests that Chamblin is unlikely to be either a flight risk or a danger to the community. Chamblin is a

20

permanent resident alien, with an American wife and son, and real property in New Hampshire. He has not lived in Haiti since 1970, when he moved here at age fourteen with his family. In addition to these personal ties to the community, he has a chance of succeeding on his § 212(c) application. Under these circumstances, the likelihood that he would not appear at future deportation proceedings is small.

Chamblin also would appear to present very little danger to the community. Aside from his alcohol-related driving offenses, which are not the basis of his deportation, his theft offenses did not involve significant dollar values and do not appear to have involved guns or any other type of weapon. Without minimizing the significance of his criminal record, none of the crimes for which he has been convicted involved any direct physical injury to another individual, such that he appears likely to present a danger to his community. Under the circumstances, his detention does not appear to be narrowly tailored to advance the government's legitimate goals to justify the prolonged infringement on his liberty.

As the above analysis illustrates, § 1226(c)'s mandatory detention provision is arbitrary and capricious, because the detention it requires can be excessive in relation to the Government's concerns about an alien's flight risk and danger to the community. Its preclusion of any individualized determination or discretionary decision-making by the INS so "interferes with rights 'implicit in the concept of ordered

21

liberty'" that it "shocks the conscience." <u>Salerno</u>, 481 U.S. at 746. Unlike other cases where detention has been upheld, § 1226(c) does not permit any exercise of discretion or provide any time limit on the detention it mandates. <u>Cf.</u> <u>Carlson</u>, 342 U.S. at 541-42 (upholding detention at the AG's discretion where bail was allowed in the "large majority of cases" and its refusal in the contested cases was not arbitrary and capricious); <u>Flores</u>, 507 U.S. at 307 (permitting detention which would be reviewed within 24 hours); <u>Salerno</u>, 481 U.S. at 747 (finding pretrial detention constitutional where prompt hearings are available to determine risk of flight and danger, and detention is restricted by the Speedy Trial Act); <u>see also</u> <u>Martinez</u>, 28 F. Supp. 2d at 1282 (finding § 1226(c) unconstitutional because its mandatory detention is excessive in relation to the goals Congress sought to achieve); <u>Caballero</u>, 914 F. Supp. at 1378 (finding § 1252 unconstitutional as applied because the alien had been held for three years awaiting deportation).

Due process appears to require, therefore, consideration of individual circumstances to determine whether the infringement on liberty is narrowly tailored to advance the important goals of reducing the risk of flight and danger to the community. <u>See</u> <u>e.g.</u> <u>Hermanowski</u>, 1999 WL 111520, at *11 (looking at the time an alien has spent and potentially will spend detained, the likelihood of deportation, and the likelihood that release would impede the deportation proceeding). Even those cases in which § 1226(c) was upheld as constitutional turned on the specific

facts before the court, so that the alien actually received an individualized determination of the need for his detention. See e.g. Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999) (upholding § 1226(c) after looking at the alien's particular case and concluding that because removal was imminent with no possibility of relief from deportation, detention was constitutional); Diaz-Zaldierna, 1999 WL 199110, at *5-6 (S.D.Cal. March 16, 1999) (discussing how the presumption of danger ascribed to aliens convicted of drug offenses justified detaining alien "at least for a reasonable time" under § 1226(c)). Section 1226(c) does not even create a presumption of flight risk and danger which an alien's individualized circumstances possibly could rebut. The mandatory detention provision is simply not narrowly tailored to serve the Government's stated reasons for detaining aliens pending resolution of their removal proceedings. Cf. Salerno, 481 U.S. at 750 (allowing pretrial detention where the Government is required to demonstrate by clear and convincing evidence "[i]n a full-blown adversary hearing" that no conditions of release can reasonably assure the safety of the community or the arrestee's availability for trial).

I find that it "shocks the conscience" to detain a permanent resident alien indefinitely, because he is convicted of an aggravated felony, based solely on the assumption that he will flee and is dangerous. Cf. Carlson, 342 U.S. at 538 ("Of course purpose to injure . . . [cannot] be imputed generally to all aliens subject to deportation"). Section 1226(c)'s complete lack

23

of any process by which to determine whether detention is in fact warranted, or is excessive in light of the alien's individual circumstances, which results in indefinite detention with no opportunity for release until the deportation proceeding is complete, interferes with our concept of ordered liberty. Because the statute utterly precludes any individual determination of the need for detention, I find that it is excessive in relation to the goals it intends to advance. The statute is not narrowly tailored to serve the important goals of reducing both abscondment and danger and, therefore, violates Chamblin's substantive due process rights. I cannot find any set of circumstances under which it would be constitutional.

### (ii) Procedural Due Process

Since § 1226(c) violates the substantive due process clause, no amount of process could render the statute constitutional. See Collins, 503 U.S. at 125 (explaining that the substantive component "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Chamblin's alternative argument that § 1226(c) violates his procedural due process rights is, therefore, unnecessary. See Salerno, 481 U.S. at 746 (reviewing on procedural due process grounds only those statutes which survive substantive due process scrutiny); see also Flores, 507 U.S. at 306 (turning to the due process analysis after statute passed substantive due process review). As an alternative basis for

24

finding the statute unconstitutional, however, and because "the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Flores, 507 U.S. at 306, I summarily analyze the procedural due process claim.

Since I have concluded that § 1226(c)'s failure to provide any consideration of the specific need for an alien's detention constitutes the substantive due process violation, that analysis "essentially subsumes the procedural due process analysis in this case." Caballero, 914 F. Supp. at 1378 (reviewing the constitutionality of indefinite detention under § 1252). Procedural due process analysis reviews whether governmental action is implemented in a fair manner, by assessing the procedures attendant that conduct. See Salerno, 481 U.S. at 746, 755 (allowing deprivation of liberty because of the numerous procedural safeguards provided by the Bail Reform Act).

A procedural due process analysis requires the court to

> consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

Plasencia, 459 U.S. at 34. Section 1226(c) provides for no procedures to review its detention directive. An alien's loss of liberty is significant, while the cost of additional process before an immigration judge for a hearing to allow consideration of the alien's flight risk and danger to the community is

minimal.[5] Without commenting on what procedures would comport with the due process clause, the current statutory provision depriving alien's of their liberty without any procedural protections violates Chamblin's procedural due process rights. See id. at 35 (limiting the role of the judiciary "to determining whether the procedures meet the essential standard of fairness under the Due Process Clause"); see also Salerno, 341 U.S. at 746 (explaining that the Government action must be implemented fairly if the liberty deprivation is to satisfy procedural due process).

Accordingly, I find that there are no circumstances under which § 1226(c)'s mandatory detention provision could be constitutional. By completely denying Chamblin any procedural protection before depriving him of his liberty indefinitely, § 1226(c) is an arbitrary and capricious exercise of governmental power in violation of the due process clause. In reaching this decision, I offer no opinions on the substantive issue of when detention of aliens pending their deportation is appropriate. My conclusion is limited to the narrow point that detention without an individualized determination of need therefore is not narrowly

---

[5]To the extent Chamblin received an individualized determination by the District Director of the INS, that does not satisfy the due process requirement that bail determinations be made by an independent decision maker. See Cabreja-Rojas v. Reno, 999 F. Supp. 493, 497-98 (S.D.N.Y. 1998) (citing cases). Moreover, the INS' regulations seem to require that aliens be given the right to appeal initial custody decisions to an immigration judge. See 8 C.F.R. § 236.1(d) (1999) (providing a right to appeal an initial custody determination made by the district director to an immigration judge for "amelioration of the conditions under which he or she may be released."). By contrast, § 1226(c) contemplates no bail hearing under any circumstances.

tailored to serve the legitimate goals of reducing the risk of abscondment and danger to the community. I, therefore, recommend that Chamblin's petition for a writ of habeas corpus be granted to the extent that he requests a bail hearing. Respecting the extensive power of the legislative and executive branches in determining immigration matters and recognizing the limited role of the judiciary in assuring only that the power is exercised constitutionally, I recommend that the bail hearing be held before an immigration judge rather than this court. See e.g. Martinez, 28 F. Supp. 2d at 1285 (granting habeas petition and remanding to the INS for an individualized bond hearing); see also Morisath v. Smith, 988 F. Supp. 1333, 1340-41 (W.D. Wash. 1997) (same).

## Conclusion

For the foregoing reasons, I recommend that Chamblin's petition for a writ of habeas corpus be granted (document nos. 9, 12, 16, 18, 19 and 24). I recommend that his § 212(c) application for a waiver from deportation be remanded to the BIA for consideration on the merits. I also recommend that this court remand Chamblin's request for a bail hearing to an immigration judge for immediate consideration. Respondent shall schedule and hold a bail hearing for Chamblin before an immigration judge within thirty (30) days of the date of the district court's Order accepting the Report and Recommendation, in the event such an Order is issued. Finally, I recommend that if the court accepts this Report and Recommendation, it further

27

order Chamblin's release pending final resolution of his § 212(c) application, if the bail hearing is not held within the specified time.

Any objections to this Report and Recommendation must be filed within ten days of receipt of this notice. Failure to file an objection within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:   June 8, 1999

cc:     Steven M. Gordon, Esq.
        Peter E. Papps, Esq.
        Thankful T. Vanderstar, Esq.

28